# Unreported Cases

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 21136308 (S.D.N.Y.), 8 Wage & Hour Cas.2d (BNA) 1367
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Jacobsen    v.    Stop    &    Shop    Supermarket
Co.S.D.N.Y.,2003.

United States District Court,S.D. New York.

Glen JACOBSEN, on behalf of himself and all others
similarly situated, Plaintiff,

v.

THE STOP & SHOP SUPERMARKET COMPANY,
Defendant.

**No. 02 Civ. 5915(DLC).**

May 15, 2003.

Employee sued employer, alleging violations of the
Fair Labor Standards Act (FLSA) requirements con-
cerning payment of overtime compensation. On the
employee's motion to certify a class and send notice
to the class, the District Court, Cote, J., held that: em-
ployee would be granted certification and permission
to send notice.

Motion granted.

West Headnotes

**Labor and Employment 231H ⚖➥2375**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime
Pay
            231HXIII(B)6 Actions
                231Hk2373 Actions on Behalf of Others
in General
                231Hk2375 k. Employees Similarly
Situated. Most Cited Cases
    (Formerly 232Ak1493 Labor Relations)
Employee suing employer for alleged violations of
the Fair Labor Standards Act (FLSA) requirements
concerning payment of overtime compensation would
be granted certification of a class and permission to
send notice to potential class members to allow them
to "opt-in" to the class; the employee showed that the
employer had a policy and practice of not paying
overtime to trainee and back-up managers, and that
he was similarly situated to such employees, and
presented evidence that managers may have been

non-exempt employees, and that he was similarly
situated to the managers employed by the employer
during the three years preceding the lawsuit. 29
U.S.C.A. § 216(b).

Eric Steinberg, Eastwood Scandariato & Steinberg,
North Bergen, NJ, Peter A. Cross, Jacob Medinger &
Finnegan LLP, New York, NY, for Plaintiff.

Peter A. Walker, Christopher Lowe, Seyfarth Shaw,
New York, NY, for Defendant.

*OPINION AND ORDER*

COTE, J.

**\*1** On July 25, 2002, Glen Jacobsen ("Jacobsen")
filed this action alleging violations by the Stop &
Shop Supermarket Co. ("Stop & Shop") of the Fair
Labor Standards Act ("FLSA") requirements con-
cerning payment of overtime compensation. Jacobsen
now seeks certification of a class and permission to
send notice to potential class members in order to al-
low them to "opt-in" to the class. For the following
reasons, the motion to certify and to send notice to
the class is granted.

BACKGROUND

Jacobsen was permitted to file an amended com-
plaint, and did so on September 26, 2002. The parties
completed discovery concerning Jacobsen himself in
January 2003, and then briefed the instant motion.

Jacobsen seeks to certify this action as a collective
action under the FLSA on behalf of persons who
have been employed in a Stop & Shop store's general
merchandise ("gm") department as (1) a trainee for
the manager position, (2) a backup or reserve man-
ager, or (3) a manager during the three years prior to
the time he filed this lawsuit. The general merchand-
ise department is in charge of the non-food items sold
in the stores. Jacobsen has submitted evidence that he
held these three positions and that he was required to
work a minimum of forty-seven hours each week in
each of them. His evidence also provides a basis for
finding that Stop & Shop failed to pay overtime com-
pensation as required by Section 207(a)(1) of the
FLSA, 29 U.S.C. § 207(a)(1), and that its violation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 21136308 (S.D.N.Y.), 8 Wage & Hour Cas.2d (BNA) 1367
(Cite as: Not Reported in F.Supp.2d)

was willful as to at least the trainee and backup manager positions.

Stop & Shop agrees that it was required to pay overtime compensation to trainees and backup managers. It contends that it did. Stop & Shop argues that it is not required to pay overtime compensation to managers since they are "exempt" employees.

Jacobsen has presented evidence in support of this motion that, when construed in his favor, shows the following.

### Trainee

When Jacobsen was hired as a general marketing manager ("gmm") trainee in February 2000, he was told that he would be an "exempt" employee, would have to work at least forty-seven hours a week, and would be paid a weekly salary of $600. He was told that he would not be paid any overtime. A schedule that he received during his orientation confirmed that he would be working a minimum of a forty-seven hour work week. A brochure explained that as exempt employees trainees do not receive overtime pay. Jacobsen contends that he worked approximately fifty hours a week during his eight weeks as a trainee and was never paid any overtime.

Trainees are required to submit a weekly time sheet. In contrast, non-exempt, union employees at Stop & Shop are given swipe cards so that their hours are recorded by a computerized time clock. Jacobsen only prepared time sheets for four of his eight weeks as a trainee. No one asked Jacobsen for the time sheets for the other four weeks.

Stop & Shop's personnel records for all of its trainees reflect that they were paid at a rate of $600 per week. No hourly rate of pay is listed in these records. Its computerized payroll records indicate a rate of pay of $600 per week for 40 hours of work. The payroll records that reflect compensation to trainees for their eight hour day of orientation include a payment equal to one-fifth of the entire week's salary. If the week's salary were comprised of 40 hours of straight time and 7 hours of overtime, the one-fifth payment was an overpayment for the eight hour day. Indeed, the only way in which the one-fifth payment can be re-

conciled with the weekly payments made to employees, is if they were not paid at all for the extra seven hours of work. The Stop & Shop payroll records for union employees reflect, as required by Department of Labor regulations, an hourly rate of pay and a weekly breakdown of "straight" versus overtime pay.

*2 In 1988, outside counsel for Stop & Shop provided an opinion that the positions of trainee and back-up manager were non-exempt positions. Despite this advice from counsel, Stop & Shop did not conform its record keeping practices or the brochures and literature it gave to its employees to this fact or to the requirements of the law for payment of non-exempt employees.

### Back-up Manager

Jacobsen became a back-up manager on April 24, 2000. As a back-up manager, Jacobsen was also required to work a minimum of forty-seven hours a week. He often worked fifty or more hours a week. He continued to receive $600 per week in pay and no overtime pay.

### Manager

In approximately December 2000, retroactive to November 6, Jacobsen was designated a manager or gmm. He was required to work a minimum of forty-seven hours a week. He usually worked between fifty-two to fifty-five hours a week, and was never paid any overtime. Stop & Shop officially classified the manager position as exempt under the FLSA.

Jacobsen contends that most of his time he did the same menial, non-managerial work as a manager that he had done in his previous two positions, including unloading products from trucks, sorting products into tins or "totes", stamping prices on products, shelving the products, and taking out trash. He never did any of the more supervisory tasks performed by his superiors, such as, disciplining employees or deciding on anyone else's compensation. Stop & Shop records can be read to indicate that no more than 15% of a manager's time is allocated to managerial tasks such as the supervision of others.

### DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21136308 (S.D.N.Y.), 8 Wage & Hour Cas.2d (BNA) 1367
(Cite as: Not Reported in F.Supp.2d)

Section 207(a)(1) provides:
no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1); _Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir.2003)._

Congress has expressly exempted certain categories of employees from FLSA's overtime requirements, including, _inter alia,_ persons "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1); _Freeman v. Nat'l Broadcasting Co., Inc.,_ 80 F.3d 78, 82 (2d Cir.1996). The regulations promulgated by the Secretary of Labor under the statute, however, distinguish between "the bona fide executive and the 'working' foreman or 'working' supervisor who regularly performs 'production' work or other work which is unrelated or only remotely related to his supervisory activities." 29 C.F.R. § 541.115. "[T]he work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial the exemption does not apply." _Id.; see also Brock v. Norman's Country Market, Ind.,_ 835 F.2d 823, 825-26 (11th Cir.1988).

*3 29 C.F.R. § 516.2(a) requires that employers maintain and preserve payroll records for non-exempt employees that specify the "regular hourly rate of pay for any workweek in which overtime compensation is due ..., [the] hours worked each weekday and total hours worked each workweek ..., [the] total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation ... [and] the total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours...." 29 C.F.R. § 516.2(a)(1) through (9). If an employer seeks to pay a non-exempt employee a weekly salary that includes a premium overtime component calculated at time and one-half of an hourly rate, there must be an express agreement to such an arrangement. _See Moon v. Kwon,_ 2002 U.S. Dist.

LEXIS 16801 at *16 (S.D.N.Y. Sept. 9, 2002); _Giles v. City of New York,_ 41 F.Supp.2d 308, 317 (S.D.N.Y.1999) (collecting cases). _See also_ 29 C.F.R. § 778.309; _Adams v. Dep't of Juvenile Justice of the City of New York,_ 143 F.3d 61, 67 (2d Cir.1998).

While the statute of limitations for violation of the FLSA is ordinarily two years, for willful violations it is extended to three years. 29 U.S.C. § 255(a); _Brock v. Superior Care, Ind.,_ 840 F.2d 1054, 1061 (2d Cir.1988). A willful violation exists when an employer knew or reckless disregarded the fact that its conduct violated the FLSA. _McLaughlin v. Richland Shoe Co.,_ 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); _Brock,_ 840 F.2d at 1062. A failure to keep the records required by the Department of Labor regulations for non-exempt employees, _see_ 29 C.F.R. § 516.2(a), may permit a finding of willfulness. _Moon,_ 2002 U.S. Dist. LEXIS 16801 at *87.

When an employee is not paid the overtime compensation required by Section 207(a)(1), the employee may bring suit on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b). In seeking authorization for a class action, a plaintiff must make a "modest factual showing" that he and the other putative class members "were victims of a common policy or plan that violated the law." _Realite v. Ark Restaurants Corp.,_ 7 F.Supp.2d 303, 306 (S.D.N.Y.1998) (collecting cases).

When a sufficient showing has been made in support of certification, it is appropriate to send a notice of pendency to putative class members. _Realite,_ 7 F.Supp.2d at 305-07. "Although one might read the [FLSA], by deliberate omission, as not providing for notice, we hold that it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case." _Braunstein v. Eastern Photographic Labs., Inc.,_ 600 F.2d 335, 336 (2d Cir.1978).

_Trainees and Back-up Managers_

The defendant agrees that trainees and back-up managers were required to work at least forty-seven hours a week. It contends that it treated these two positions

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21136308 (S.D.N.Y.), 8 Wage & Hour Cas.2d (BNA) 1367
(Cite as: Not Reported in F.Supp.2d)

Page 4

as non-exempt and did not use a swipe-card system to record their time because they were non-union. It contends that it computed their compensation as required by law, paying them $600 per week according to the following system: a rounded off figure based on forty hours at $11.88 per hour and seven hours at $17.82 hour. It explains that its payroll system treated the compensation like a salary and thus "automatically" reflected a forty-hour week even though the pay period was really forty-seven hours. Although the plaintiff's records reflect that he worked 10.2 hours in "extra" overtime during his first four weeks as a trainee, and that he was not paid for this work, the defendant contends the failure to pay him was an "oversight" and not evidence of any practice. It contends that it pays additional overtime for hours worked beyond forty-seven hours a week and did so for 245 of the 641 trainees and back-up managers it employed between July 14, 1999 and October 26, 2002.

*4 The plaintiff has carried his burden of showing that the defendant had a policy and practice of not paying overtime to trainee and back-up gmm's and that he is similarly situated to such employees. The defendant's own payroll records can be read as evidence that there was no overtime payment for any of the hours worked beyond forty hours a week. They contain no break down as required by 29 C.F.R. § 516.2, and make no other mention of an hourly rate or overtime. The written materials it presented to such employees would have led them to believe that the company considered them to be exempt employees who were not entitled to overtime. The plaintiff may be able to show that the violation was willful.

*Managers*

Stop & Shop contends that as a manager, the plaintiff was an exempt employee. It presents documents in which the plaintiff's supervisory duties are listed, including the responsibility for supervising associates working under him. It points out that a manager is a "closer" once a week, during which time he is in charge of the entire store from 5:00p.m. to 7:00p.m. It argues that the "productivity guideline" that it provides to managers does not dictate who is to perform the functions, that a manager may delegate the tasks to subordinates, and that no one person could perform each of the non-supervisory, menial tasks described in the guideline.

The plaintiff has presented sufficient evidence that managers may have been non-exempt employees and that he was similarly situated to the gmm's employed by Stop & Shop during the three years preceding this lawsuit. While it is a closer call as to whether the plaintiff has presented sufficient evidence that this violation was willful, he has not yet had the full discovery that will accompany certification of the class. It is appropriate, based on this record to provide notice to those who held the position of gmm during the three years preceding this lawsuit.

CONCLUSION

The motion to certify and to send notice to the class is granted.

SO ORDERED:

S.D.N.Y.,2003.
Jacobsen v. Stop & Shop Supermarket Co.
Not Reported in F.Supp.2d, 2003 WL 21136308 (S.D.N.Y.), 8 Wage & Hour Cas.2d (BNA) 1367

Briefs and Other Related Documents (Back to top)

• 1:02cv05915 (Docket) (Jul. 25, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23142183 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
Carter v. Indianapolis Power and Light
Co.S.D.Ind.,2003.Only the Westlaw citation is currently available.
United States District Court,S.D. Indiana, Indianapolis Division.
George M. CARTER, Bobby M. Majors, and Steven
M. Glasgo, individually and on behalf of others similarly situated, Plaintiffs,
v.
INDIANAPOLIS POWER AND LIGHT COMPANY, Defendant.
No. IP102CV01812SEBVSS.

Dec. 23, 2003.

John R. Price, John R. Price & Associates, Indianapolis, IN, for Plaintiffs.
Michael A. Moffatt, Jan J. Kinzie, Ogletree, Deakins, Nash, Smoak & Stewart, Indianapolis, IN, for Defendant.

*ENTRY ON PLAINTIFFS' MOTION TO JOIN ADDITIONAL PARTIES*
BARKER, J.

### Introduction

**\*1** This matter comes before the Court on Plaintiffs' Motions to Join Additional Parties, to Order Defendant to Produce List of Potential Plaintiffs and To Approve Form of Class Notifice. Plaintiffs George M. Carter ("Carter"), Bobby M. Majors ("Majors") and Steven M. Glasgo ("Glasgo") are former employees of the Indianapolis Power and Light Company ("IPL") who filed this suit on behalf of themselves and other similarly situated individuals alleging that IPL failed to compensate them for overtime hours worked as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The plaintiffs seek a conditional certification of a plaintiff collective action under § 216(b) and the necessary discovery to allow for written notification of the potential class. The defendant is opposed on two grounds: 1) the plaintiffs fail to show they are similarly situated to the employees in the proposed class and; 2) they fail

to show that any similarly situated putative class member desires to opt-in to their lawsuit. For the reasons explained below, the plaintiffs' motions are *GRANTED*.

### Factual and Procedural Background

Carter, Major and Glasgo were employed by IPL as "supervisors." Pls.' Complaint ¶¶ 7-9; Def.'s Answer ¶¶ 7-9. Carter and Glasgo were first level supervisors in the Harding Street Power Plant and Major was a first level supervisor in the Petersburg Power Plant. Def.'s Opp'n Br. at 7; Kunz Aff., ¶¶ 4-6. In the IPL "exempt position description" documents offered by Defendant, Carter is described as a Coal & Ash Foreman who reported to the Operations Supervisor and Majors and Glasgo were Mechanical Maintenance Foremen reporting to the Maintenance Supervisor. Id.; Exhibits A-C.

The plaintiffs allege that despite their title of supervisor, they were essentially non-exempt, hourly employees with no management responsibilities. For instance, they were classified as "non-exempt supervisors" on internal payroll records, performed duties more similar to their union brethren in the company than to other salaried management personnel, and were never invited to attend management meetings. Pls.' Complaint ¶¶ 28-34. As such, plaintiffs argue that under the wage and hour provisions of the FLSA, they were entitled to be paid for overtime work at one and one-half times their hourly rate rather than on a straight time basis in contravention of the FLSA.[FN1] In their Complaint, the plaintiffs described the potential class of similarly situated employees as hourly, non-managerial "supervisors" who were paid for overtime work on a straight time basis. Id. ¶ 1-4. More recently, however, the plaintiffs have sought to expand the class to all patently non-managerial employees who were paid on a straight time basis for overtime hours worked. Pls.' Response Br. at 4.

> FN1. 29 U.S.C. § 207(a)(1): Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23142183 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

In support of their motion for joinder of additional parties (also referred to as a motion for approval of class notification), the plaintiffs submit three affidavits and a consent form from a former employee who wishes to opt-in to the litigation. Two former employees attest to the nature of their job responsibilities and overtime compensation while IPL supervisors. Pls.' Response Br. at 2; Aff. of Majors; Pls.' Submission of Add'tl Support; Aff. of Pierson. Former IPL employee, Jim Collins, asserts that the company assigned a special payroll designation (wage hour designation code 6) to those employees who were to receive straight-time compensation for overtime hours. Pls.' Response Br. at 2; Ex. B. Finally, to support the expansion of the proposed plaintiff class to include other employees who were similarly underpaid for overtime hours, but who, unlike the plaintiffs were not "supervisors," the plaintiffs submit a consent form signed by "management trainer" Debbie J. Johnson-Miller who wishes to join the litigation. Id. at 4; Ex. C.

*2 Plaintiffs request that the defendant produce a list of names and addresses of former and current IPL employees, namely those patently non-managerial employees classified as supervisors, foremen, management trainers, etc., who were paid straight-time rather than time-and-a-half for overtime work. They wish the court to approve the form of the proposed notice, which states, in part:
Please be advised that on November 21, 2002 George M. Carter, Bobby M. Majors and Steven M. Glasgo brought a law suit in the United States District Court for the Southern District of Indiana, Indianapolis Division (Cause No. 1:02-CV-1812-SEB-VSS). The suit seeks recovery on behalf of the Plaintiffs from Indianapolis Power & Light Company for unpaid overtime pay for certain employees and former em-

ployees of IPALCO. Those employees are persons who are designated in the Complaint as "supervisors" and who were paid straight time for their overtime hours, as opposed to time and a half. The supervisors are persons who are not members of the Union IBEW. The Plaintiffs have represented in their suit that the primary duties of the supervisors did not consist of management of IPALCO; that they did not have authority to hire or fire other employees, or to bind the company as to their suggestions and recommendations concerning the hiring and firing of other employees; they did not customarily and regularly exercise discretion and independent judgment consistent with administrative positions; and they could, occasionally, if needed, perform manual work related to their employment.

Pls.' Motion to Join Additional Parties.

### Discussion

### I. Motion to Join Additional Parties

### A. Class Certification Under the FLSA

The express terms of the statute provide that an action for unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated.*" 29 U.S.C. § 216(b) (emphasis supplied). Such a collective action differs markedly from a Rule 23 class action, however, because of a crucial provision in § 216(b) which renders the two types of collective actions fundamentally incompatible: class members must *opt in* to be bound while in a Rule 23 action they must *opt out* not to be bound.FN2 *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 579 (7th Cir.1982); 29 U.S.C. § 216(b); Fed.Rules Civ.Proc. Rule 23. So while the plaintiffs' joinder request in the case before us is analogous to a class certification request in a civil class action under Rule 23, the Rule and its standard do not govern a FLSA case.

> FN2. Title 23 of the United States Code, Section 216(b): No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23142183 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

a party and such consent is filed in the court in which such action is brought.

As a threshold matter, it is well-settled that a District Court has the discretion to authorize notice to similarly situated employees so that they may opt-in to a class. See *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Yet the method by which the Court determines whether a FLSA class should be certified (and notice given to the prospective class) is a matter which divides courts along two lines. See generally *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212-16 (5th Cir.1995); *Burns v. Village of Wauconda*, 1999 WL 529574, *1 (N.D.Ill.1999)

*3 The first method tracks the elements of Rule 23 class certification and examines "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. *Shushan v. University of Colorado*, 132 F.R.D. 263 (D.Colo.1990); *Mooney*, 54 F.3d at 1214. The second and more lenient method takes a two-step approach to class certification. See *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987). The first step, or the "notice stage," involves an analysis of the pleadings and any affidavits which have been submitted to determine whether notice should be given to potential class members. The second step, which usually occurs after discovery has largely been completed, allows a court the opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute. *Mooney*, 54 F.3d at 1213-14; *Burns*, 1999 WL 529574 at *2.

### B. Similarly Situated

Courts in our district and throughout the Seventh Circuit have tended to adopt the second approach [FN3] and so shall we. To prevail on their motion, the plaintiffs are expected to make a threshold showing that they are similarly situated to the employees on whose behalf they are seeking to pursue this claim. See *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D.Minn.1991) ("To obtain court authorization to send the proposed notice, plaintiffs must sub-

mit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist."); *Krieg v. Pell's, Inc.*, 2001 WL 548394, *1 (S.D.Ind.2001) (modest showing that "at least some employee-managers exist who are similarly situated to" plaintiff was sufficient to allow notice). Before notice is authorized, the court is not required to come to a "final determination" that the similarly-situated requirement has been met. *Champneys v. Ferguson Enterprises, Inc.* 2003 WL 1562219, *4 (S.D.Ind.2003); *Severtson*, 137 F.R.D. at 267; *Bontempo v. Metro Networks Communications Ltd. Partnership*, 2002 WL 1925911, *1 (N.D.Ill.2002).

> FN3. *Champneys v. Ferguson Enterprises, Inc.*, 2003 WL 1562219 (S.D.Ind.2003) (granting conditional class certification); *Krieg v. Pell's, Inc.*, 2001 WL 548394 (S.D.Ind.2001) (granting conditional class certification); *Pfaahler v. Consultants for Architects, Inc.* 2000 WL 198888 (N.D.Ill.2000) (denying conditional class certification); *Bontempo v. Metro Networks Communications Ltd. Partnership*, 2002 WL 1925911, *1 (N.D.Ill.2002) (granting approval of opt-in notice to potential class members).

Carter, Majors and Glasgo contend they are similarly situated to other potential class members because they perform the duties of "non-exempt" employees despite their job titles (supervisor, management trainer) and should therefore be paid for overtime hours in compliance with the FLSA § 207.

The plaintiffs offer the affidavit of representative plaintiff Majors to describe the class of employees called supervisors but lacking in supervisory duties. Majors alleges that since 1987, he and other "non-managerial" employees, i.e., employees with no ability to hire or fire or make management decisions for the company, routinely received straight-time pay for overtime work contrary to law. Pls.' Response Brief, Ex. B. The affidavit of Robert Pierson, also employed as a supervisor, alleges that he and four (4) other supervisors known to him had no managerial duties despite their titles and as hourly employees

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23142183 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

were paid straight time rather than one and half times their wage for overtime hours worked. Pls.' Submission of Additional Support, Aff. of Robert Pierson. In addition, former IPL employee Jim Collins attests to personal knowledge of several hundred IPL employees who were not "bona fide" management personnel (supervisors, foremen, management trainers) but were given a wage designation code of 6 in payroll records which resulted in their exemption from the overtime protections in the FLSA. Pls.' Response Brief at 2; Ex. A. One such former employee, Debbie Johnson-Miller, has already granted her consent to be added as a plaintiff in this cause. Id., Ex. C. Ms. Johnson-Miller was employed as a "management trainer" and was paid only straight time rather than time and half for overtime hours. Id. at 4.

*4 The plaintiffs have offered more than the required "modest showing" and seek the defendant's assistance in identifying those employees who were: a) clearly not in management positions and; b) paid straight time for overtime hours. We recognize that when a court feels compelled to conduct a fact-specific inquiry into the job duties of each opt-in class member, then certification is not appropriate. *Tumminello v. United States,* 14 Cl.Ct. 693, 697 (1998); *Pfaahler v. Consultants for Architects, Inc,* 2000 U.S. Dist. Lexis 17722, *8 (E.D.Ill.2000). However, after the requested discovery has been completed, those persons not in *bona fide* management positions within IPL but employed in various positions such as supervisor, foreman, management trainer who were paid for overtime at a straight time rate should form themselves into a recognizable class of employees similarly situated to the named representatives.

### C. Motion to Strike the Affidavits

Defendant has moved to strike Plaintiffs' affidavits for being vague, conclusory and without foundation as to personal knowledge. Def.'s Surreply at 3. We *DENY* the motion because we find the assertions in the Majors and Pierson affidavits to be sufficiently based on personal knowledge of their own employment experience. For example, it is reasonable for them to reliably attest to the nature of their job responsibilities as supervisors, to their never having

fired or hired personnel while employed as supervisors, and to the terms of their overtime compensation over the years spent at IPL.

For the reasons stated above, we *GRANT* the conditional certification of the class.

### II. *Motions to Order Defendant to Produce List of Potential Plaintiffs*

Upon the conditional certification of collective action under the FLSA, it follows that the representative plaintiffs could seek from the District Court an order approving the proposed form of notice as well as an order directing the defendant, in an appropriate case, to furnish the plaintiff with the names and addresses of potential class members. In *Hoffmann-LaRoche, Inc.,* the Supreme Court found the District Court appropriately permitted discovery of the names and addresses of discharged employees after the Court found that the discovery was relevant to the subject matter of the action and that there were no grounds to limit the discovery under the facts and circumstances of [the] case. 493 U.S. at 170 (1989); *see also, Woods,* 686 F.2d at 580.

Upon our conditional certification of a proposed class, we find it appropriate to *GRANT* Plaintiffs' motion for disclosure of names and addresses of potential plaintiffs. *See Champney's,* 2003 WL 1562219 at *7 (S.D.Ind.2003); *Severtson,* 137 F.R.D. at 267 (D.Minn.19) (remanding for reconsideration under different standard magistrate's approval of notification; noting that if notice is warranted, discovery of names and addresses of potential plaintiffs should be allowed).

### III. *Notice to Potential Plaintiffs*

*5 We cannot, however, approve the plaintiffs' proposed form of notice because it is tailored only to those IPL employees designated as "supervisors" who were paid straight time for their overtime hours rather than time and a half. The plaintiffs have successfully argued that the potential class encompasses all those persons who were not in bona fide management positions within IPL but had various positions such as supervisor, foreman, management trainer and were paid for overtime at a straight time rate; accord-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23142183 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

ingly, the notice should reflect this designation. As a result, Plaintiffs have leave to resubmit their proposed notice.

### Conclusion

For the reasons given above, we *GRANT* Plaintiffs' Motion to Join Additional Parties and to Order Defendant to Produce a List of Potential Plaintiffs. We give the plaintiffs' leave to resubmit the letter directed to the putative class members.

S.D.Ind.,2003.
Carter v. Indianapolis Power and Light Co.
Not Reported in F.Supp.2d, 2003 WL 23142183 (S.D.Ind.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23935169 (Trial Motion, Memorandum and Affidavit) Defendant's Sur-Reply in Opposition to Plaintiffs' Motion to Join Additional Parties and to Order Defendant to Produce List of Potential Plaintiffs and Plaintiffs' Motion to Increase Those Notified (Aug. 1, 2003) Original Image of this Document (PDF)
• 2003 WL 23935168 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Brief in Opposition to Plaintiffs' Motion to Join Additional Parties and to Order Defendant to Produce List of Potential Plaintiffs and Plaintiffs' Motion to Increase Those Notified (Jun. 26, 2003) Original Image of this Document (PDF)
• 2002 WL 32760550 (Trial Pleading) Class Action Complaint (Nov. 21, 2002) Original Image of this Document (PDF)
• 1:02cv01812 (Docket) (Nov. 21, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                Page 1
Not Reported in F.Supp.2d, 2002 WL 31475212 (E.D.Ark.), 148 Lab.Cas. P 34,746, 8 Wage & Hour Cas.2d (BNA)
412
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents

McQuay    v.    American    Intern.    Group,
Inc.E.D.Ark.,2002.
United States District Court,E.D. Arkansas, Western
Division.
Betty MCQUAY, Jeff Gibbs, Yolanda Simmons,
Catherine Eckelkamp and Dan Ray, individually and
on behalf of others similarly situated, Plaintiffs
v.
AMERICAN INTERNATIONAL GROUP, INC., et
al. Defendants
**No. 4:01CV00661 WRW.**

Oct. 25, 2002.

ORDER

WILSON, J.

### I. Procedural Status:

*1 Plaintiffs have moved to conditionally designate
this case as a collective action under the Fair Labor
Standards Act (FLSA), 29 U.S.C. § 201 et seq., to al-
low notice and an opportunity to other similarly situ-
ated claims representatives to "opt in," and to desig-
nate plaintiffs as adequate class representatives of the
collective action.

Both parties have submitted numerous briefs, exhibits
and affidavits to support their positions. In addition to
the voluminous record, I held a conference allowed
by Fed.R.Civ.P. 16 and was enlightened by both
parties on the issues which must be addressed in de-
ciding whether the case should proceed as a collect-
ive action. Based upon the record and the law as out-
lined below, plaintiffs' motion is GRANTED with the
limitations set forth in this order.

### II. Collective Actions:

The FLSA bars class actions in which a
"representative employee" provides the means by
which one person may sue on behalf of others, and
allows "similarly situated" employees to join in a suit
by filing notice of consent with the court. Specific-
ally, under 29 U.S.C. § 721(b) of the FLSA, employ-

ees similarly situated with plaintiffs must "opt in" to
the class by filing a written consent with the Court in
order to be bound by the outcome of the action. Con-
ditional certification of a collective action and the is-
suance of notice do not require this Court to adjudic-
ate the merits of plaintiffs' claims, but rather require a
determination that the proposed members in the col-
lective action are similarly situated. *Hoffman-La
Roche v. Sperling, et al.,* 493 U.S. 165, 173 (1989). I
make no determination here as to the merits of the
parties claims.

### III. Defendants' argument that claims representatives are exempt employees as a matter of law is rejected:

The defendants argue that claims representatives are
exempt from overtime as a matter of law in this cir-
cuit. For that proposition they rely on *Bliston v. Hart-
ford Accident and Indemnity Company,* 441 F.2d
1365 (8th Cir.1971) and a Department of Labor
(DOL) regulation which defendants state explicitly
exempts adjusters. 29 CFR § 541.205(c)(5) and DOL
wage and hour opinion letter No.563(1967). I reject
defendants argument that the authority cited requires
me to rule as a matter of law on that issue.

It is true that the *Bliston* Court affirmed a district
court opinion finding a claims adjuster exempt from
overtime under the FLSA and added that plaintiff
conceded that he had uncontrolled settlement author-
ity of $3,000 per case and that the bulk of cases were
settled within his authority. However, the *Bliston*
Court also affirmed many other findings of the dis-
trict court to support its ruling. Specifically, the Court
affirmed findings that the plaintiff exercised a great
deal of discretion in the performance of his duties,
was completely unsupervised, and was encouraged
by his employer to exercise discretion. *Id.* 1366. Ad-
ditionally, the *Bliston* opinion reviews wage and hour
opinion letter No. 563 (1967) cited by defendants
here, and correctly states the language of the letter,
that "claims adjusters can come within the exemption
." *Id.* 1366 (emphasis added). For these reasons, I re-
ject the defendants argument that claims adjusters are
exempt under the overtime provisions before this
court in this case as a matter of law.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2002 WL 31475212 (E.D.Ark.), 148 Lab.Cas. P 34,746, 8 Wage & Hour Cas.2d (BNA)
412
(Cite as: Not Reported in F.Supp.2d)

### IV. This action is conditionally certified as a collective action:

*2 The parties agree in their briefs that the initial inquiry I must make in determining whether to conditionally certify this as a collective action is to determine whether the proposed membership is similarly situated. In doing this, a majority of courts have adopted a two-step process by conditionally ordering the class to proceed as a collective action at a notice stage and permitting motions to decertify after discovery. *Mooney v. Aramco & Servs. Co.,* 54 F.3d 1207 (5th Cir.1995). The parties agree that this Circuit has not addressed the precise issue and have directed me to district court opinions in the circuit. I find that the affidavits of the plaintiffs, job descriptions, and supporting deposition testimony of Mr.O'Brian and Mr. Yeargin support an order to allow this case to proceed as a collective action.

### V. The Plaintiffs are representatives of the proposed collective action:

The motion addressed here asks me to appoint the named plaintiffs as class representatives. It appears from the affidavits submitted that they are all claims representatives adjusting workers compensation claims in the states of Arkansas and Oklahoma. They all allege that the work they perform for the defendants does not qualify for the exemption and that they are denied overtime for their work. Importantly, they have retained adequate class counsel and the defendants have not objected to their adequacy as representatives, but only to whether plaintiffs are similarly situated to other claims adjustors. I finds that Plaintiffs' have met the threshold necessary to proceed as representatives of the collective action.

Defendants have directed my attention to the fact that plaintiff, Jeff Gibbs, did not submit an affidavit, that he is the only plaintiff that worked in the Dallas, Texas Workers Compensation Service Center rather than Arkansas and, that he lacks any demonstrable connection to the Little Rock Service Center or to the other plaintiffs. Defendants suggest that it may well be appropriate, at a subsequent date, to sever his case. (Def. Brief p. 6). That motion is not before me. In any event, workers compensation claims adjusters are

not part of the conditional certification in view of the limitations on the membership because of different geographic locations, different supervisors, different types of insurance policies, different underwriting, different state laws governing workers compensation and other reasons stated in the limitations portion of this order.

### V. Limitations on the Collective Action:

The Plaintiffs' motion requests that I certify an "opt-in" collective action with the class consisting of all current and former claims representatives who have worked for the defendants at any time during the last three years, and request that I allow notice of the action and "opt-in" consent forms to all potential collective plaintiffs. Defendants point out that this motion seeks approval of a "collective action" under the FLSA for over 800 AIGC adjustors in various job categories at 54 separate locations in 28 states. Defendants clarify the expansive nature of the proposed action by stating that there are 544 exempt-classified adjustors in workers compensation claims; 227 in property and casualty claims; 49 in complex claims; and 53 in construction claims. Concluding, there appear to be 773 exempt persons who adjust claims, working in 14 discrete job titles, with multiple functional variations within those job titles, working in 54 different locations in 28 states. These facts demonstrated by the defendants regarding the number, classification and geographic location of the potential membership of the collective action do not appear to be disputed by plaintiffs.

*3 In arguing for an expansive definition of membership, plaintiffs assert that the goal of judicial economy weighs heavily in favor of certification and that issuance of notice to potential membership relying on *Hoffman-La Roche v. Sterling,* 493 U.S. 165,170 (1989) articulating the public policy and reasons for favoring collective action when the appropriate conditions are met. It is important to this case, that, in *La-Roche,* the Supreme Court went on to rule that trial courts had authority to compel employers to provide names of potential plaintiffs in pre-trial discovery, to approve a consent form and to manage the action in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the pro-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                Page 3
Not Reported in F.Supp.2d, 2002 WL 31475212 (E.D.Ark.), 148 Lab.Cas. P 34,746, 8 Wage & Hour Cas.2d (BNA) 412
(Cite as: Not Reported in F.Supp.2d)

visions of the Federal Rules of Civil Procedure. *Id.* 170. This decision is made with the teachings of *La-Roche* in mind.

A. The collective action is limited to workers compensation claims adjustors in Arkansas and Oklahoma.

The plaintiffs have failed to provide facts sufficient to find, even at this low threshold, a factual nexus between adjusters of workers compensation claims and the various other adjuster categories. Workers compensation claims are sufficiently distinct, and they vary from state to state and supervisor to supervisor. *Baum v. Shoneys's, Inc.* 1998 WL 968390, 5 WH Cases2d 127 (M.D.Fla.1998). Plaintiffs have failed to demonstrate that their actual job duties are similar to those of the putative class consisting of a wide variety of types of insurance. *Morisky v. Public Service Electric & Gas Co.,* 111 F.Supp.49 (D.N.J.2000). The *Morisky* Court correctly noted, in refusing to authorize a collective action, that FLSA cases differ from those of employment discrimination in that the focus is not on the employer's action but on the nature of the employees' job duties in the context of the relevant exemption. *Id.* at 498. The plaintiffs have focused on the fact that the exemption exists in the various job categories and have not demonstrated that the actual duties performed are sufficiently the same for me to find they are "similarly situated" in all states having service center.

In addition, plaintiffs, affidavits demonstrate knowledge limited to the Little Rock, Arkansas, center and do not establish that employees with the same job titles at other locations in the 29 states are similarly situated. *Hayes v. Singer Co.,* 696 F.2d 884, 887(11th Cir.1983)

Finally, the geographic size of the action proposed by the plaintiffs is not reasonable. The benefits, however great they may be, of collective action must be orderly and sensible. Hoffman-*La-Roche* at 170. In my decision, I have balanced the benefits of proceeding as a collective action against prejudice to the defendants and judicial inefficiencies.

For the reasons stated, the collective action is condi-

tionally certified to include putative class members, as defined above of present and former workers compensation claims adjusters from September 25, 1998, to the date of certification. Counsel for the plaintiffs and defendants are directed to confer and attempt to agree on the Notice to Opt In within 10 days from the entry of this order. If agreement is not reached, the notice proposed by plaintiff is to be filed and counsel for defendants have 10 days to object to the notice.

E.D.Ark.,2002.
McQuay v. American Intern. Group, Inc.
Not Reported in F.Supp.2d, 2002 WL 31475212 (E.D.Ark.), 148 Lab.Cas. P 34,746, 8 Wage & Hour Cas.2d (BNA) 412

Briefs and Other Related Documents (Back to top)

• 2003 WL 24170201 (Trial Motion, Memorandum and Affidavit) Defendants' Summary Judgment Reply Brief (Jun. 10, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 24170198 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment (Jun. 3, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 24170194 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion for Summary Judgment (May 16, 2003) Original Image of this Document with Appendix (PDF)
• 2002 WL 32899289 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion and Brief for Approval of Plaintiff's Proposed (I) Notice of Collective Action, (II) Consent to Join and (III) Notice Plan (Nov. 15, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32899287 (Trial Motion, Memorandum and Affidavit) Defendants' Sur-Reply to Plaintiffs' Motion for Collective Action (Jun. 17, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32899285 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Collective Action (Jun. 3, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32899283 (Trial Motion, Memorandum

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31475212 (E.D.Ark.), 148 Lab.Cas. P 34,746, 8 Wage & Hour Cas.2d (BNA) 412
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Defendants' Response to Plaintiffs' Motion for Collective Action (May 20, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32899280 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Collective Action Designation and Notice (Apr. 15, 2002) Original Image of this Document with Appendix (PDF)

• 2001 WL 34863096 (Trial Pleading) Complaint - Class Action (Sep. 25, 2001) Original Image of this Document (PDF)

• 4:01cv00661 (Docket) (Sep. 25, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JEROME ROBINSON-SMITH, )<br>4853 Burns Road, N.W. )<br>Lilburn, Georgia 30047-3786          )<br>**Individually And On Behalf of All** )<br>**Other Persons Similarly Situated,** )<br><br>                              Plaintiff, )<br><br>                    v. )<br><br>GOVERNMENT EMPLOYEES )<br>INSURANCE COMPANY, )<br>c/o Eugene C. Miller )<br>4103 Chain Bridge Road )<br>Fairfax, Virginia 22030 )<br><br>                              Defendant. )<br>                              ) | **FILED**<br><br>SEP – 4 2002<br><br>**NANCY MAYER WHITTINGTON, CLERK**<br>**U.S. DISTRICT COURT**<br><br>CASE NO. 1:01CV01340<br>JUDGE PAUL L. FRIEDMAN |

---

## ▆▆▆▆▆▆ ORDER

The Court, having considered Plaintiffs' Amended Consent Motion to Issue Notice of this

Action to Recently-Identified Collective Action Members And For Tolling ("Amended Motion"),

and Defendant's lack of opposition thereto, hereby ORDERS:

1.    Plaintiff may send a form of Notice identical to that attached as Exhibit A to the

       Amended Motion to all of the individuals identified in Exhibit B to the Amended

       Motion (the "potential class members").

2.    Potential class members who receive the Notice shall have 90 days from the date the

2



77

Notice is mailed to them to send their opt-in form to Plaintiff's counsel for filing. Upon receipt of the opt-in forms, Plaintiff's counsel will file the forms with the Court.

3.    As long as potential class members return their opt-in form to Plaintiff's counsel within the time period set forth above, then the statute of limitations shall be tolled so that the effective date of the individual's opt-in shall be considered to be March 5, 2002 for individuals who work or worked as Auto Damages Adjusters and May 24, 2002 for individuals who work or worked as Resident Auto Damages Adjusters.

4.    Plaintiff's original Motion to Issue Notice of this Action to Recently-Identified Collective Action Members And For Tolling ("Motion") shall be deemed MOOT.


IT IS SO ORDERED.

DATED: August 30, 2002

_____
Judge Paul L. Friedman

3

FILED'02 SEP 26 10:50USDC-ORP

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON

RECUP'02 SEP 25 16:26USDC-ORP

**In re FARMERS INSURANCE EXCHANGE CLAIMS REPRESENTATIVES' OVERTIME PAY LITIGATION**

Civil No. MDL Docket No. 1439 (ALL CASES)

████████ STIPULATED ORDER, *HOFFMAN-LAROCHE* NOTICE AND CONSENT TO JOIN FORM

It is hereby ORDERED that the "Notice" and "Consent to Join" attached to this Order be sent on or before October 7, 2002 to all personal lines Claims Representatives, Senior Claims Representatives, and/or Special Claims Representatives of Farmers Insurance Exchange ("FIE") ("Claims Representatives") 1) who performed work outside of the State of California; 2) who were employed within one of these positions within the three (3) years prior to October 17, 2001 (or September 27, 2001 with respect to Claims Representatives who worked at any time during that period in the State of Oregon); and 3) who were classified by FIE as exempt from overtime pay requirements while in this/these position(s).

The "Notice" and "Consent to Join" form will be sent out by or under the supervision of the Honorable Edwin Peterson, who shall serve as a Court-appointed Special Master to facilitate the sending of the "Notice" and the collection and filing with the Court of any returned "Consent to Join" forms. On or before September 23, 2002, Defendants shall deliver to Justice Peterson or his designee the names and addresses of the individuals to whom the "Notice" and "Consent to Join" forms shall be sent, as defined by the Court above, in the format preferred by Justice

1

Peterson or his designee. The "Notice" and "Consent to Join" forms shall be mailed on or before

October 7, 2002, and no other documents or communications shall be sent with the "Notice" and

"Consent to Join" forms.

To participate as a party plaintiff in the Fair Labor Standards Act collective action, an

individual must return his or her Consent to Join form to Justice Peterson postmarked on or

before December 1, 2002.

It is so ORDERED.

DATED this 26th day of September, 2002.

_____
The Honorable Robert E. Jones

Stipulated By:

_____
N. Robert Stoll, OSB No. 69165
Stoll Stoll Berne Lokting & Shlachter P.C.
Attorneys for Plaintiffs

_____
Barnes H. Ellis, OSB No. 64032
Stoel Rives LLP
Attorneys for Defendants

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS MCLAUGHLIN and GEORGE CARVER, Individually And On Behalf of All Other Persons Similarly Situated, | ) ) ) ) ) |
| Plaintiffs, | ) C. A. No. 2003-10316REK ) |
| v. | ) ) |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) ) |
| Defendant. | ) ) |

## **ORDER**

This matter came before the Court upon the Plaintiffs' Motion for Orders (1) Directing Defendant To Provide Plaintiffs With The Names And Addresses Of All Putative Class Members and (2) Authorizing Plaintiffs' Counsel To Advise Such Class Members of The Pendency Of This Action And Their Opportunity To Participate In It. The Court, having considered that Motion and the papers submitted in support thereof and in opposition thereto, and having heard counsel in open court on May 16, 2003, hereby orders:

1.    On or before ~~June~~ May 30, 2003, defendant shall provide plaintiffs with the names and last known mailing addresses of each person employed by it as an Auto Damage Appraiser at any time following February 18, 2000 ("Class Members") who is not already a party to an action in this Court entitled *Thomas Dooley v. Liberty Mutual Insurance Company*, C.A. No. 02-11029REK.

2.     On or before June 13, 2003, plaintiffs' counsel shall send to each such Class Member a copy of the Notice which is annexed hereto as Exhibit 1. Any such Class Member wishing to participate in this case shall date, sign and return to plaintiffs' counsel the Consent Form attached to said Notice. Upon receipt of any such Consent Form, plaintiffs' counsel shall forthwith file the original thereof in this Court and supply copies of the Form and the postmarked envelope in which it was received to counsel for the defendant.

3.     No such Class Member shall be allowed to opt into and participate in this case unless the envelope in which he or she mails his or her Consent Form to counsel for the plaintiffs is postmarked on or before August 13, 2003.

4.     This Order shall be without prejudice to the right of plaintiffs' counsel to make further application to the Court seeking additional information with respect to such Class Members, including but not limited to the Social Security number of any Class Member whom plaintiffs' counsel has not been able to locate using the addresses set forth in the list referred to in paragraph 1 above.

Robert E. Keeton

Robert E. Keeton
Senior United States District Judge

2

**ORIGINAL**

**Wayne D. Landsverk, OSB #73176**
Email: wlandsverk@nsslaw.com
**Jeffrey P. Chicoine, OSB #90227**
Email: jchicoine@nsslaw.com
NEWCOMB, SABIN, SCHWARTZ
 & LANDSVERK, LLP
111 S.W. Fifth Avenue, Suite 4040
Portland, OR  97204
Telephone:  (503) 228-8446
Fax:  (503) 228-5472

**Earl H. Munson**
Email: emunson@boardmanlawfirm.com
**Sarah A. Zylstra**
Email: szylstra@boardmanlawfirm.com
BOARDMAN, SUHR, CURRY & FIELD LLP
One S. Pinckney St., Fourth Floor
P.O. Box 927
Madison, WI  53701-0927
(608) 257-9521
Fax: (608) 283-1709

Attorneys for Defendant

FILED '04 MAY 04 15:50 USDC-ORE

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON

| | |
|---|---|
| DANIEL FICHTNER, individually and on behalf of all others similarly situated, | Case No. 02-6284-HO |
| PLAINTIFF, | STIPULATED ORDER REGARDING NOTICE AND OPT-IN CONSENT FORM |
| v. | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | |
| DEFENDANT. | |

1.  The notice, attached hereto as Exhibit A, is approved and will be mailed to the persons as set forth below as soon as practicable.

2.  Notice is to be mailed to all persons that worked as Physical Damage Claims Analysts for American Family Insurance Company in Oregon since April 1, 2001.

3.  The parties agree that the Court will appoint a person to serve as a special master pursuant to this Order and the instructions herein.

4.  Defendant will provide the special master with the "mailing list," consisting of names, last known addresses, and Social Security numbers ("SSN"), in computer readable format, of all potential opt-ins, to be delivered to the special master on or before May 4, 2004. Defendant will cooperate with the special master in the prompt and effective delivery of the database necessary for the mailing described below.

5.  All electronic data, documents, or other information transmitted from the defendant to the special master, any copies, excerpts, or summaries thereof, and any other data or documents prepared, compiled, sorted, or analyzed by the special master which contain or derive from electronic data, documents, or other information transmitted from the defendant to the special master **will be deemed confidential**. All such information will be used by the special master solely for purposes of providing notice pursuant to this Order, and the special master will keep confidential all such information and will be prohibited from disclosing such information to any person or organization, including but not limited to plaintiffs' counsel.

6.  The special master will prepare the following materials for mailing to potential opt-ins: (1) the Court-approved notice; (2) the Court-approved opt-in consent form

2     STIPULATED ORDER REGARDING NOTICE AND OPT-IN CONSENT FORM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTINE LINDSAY, et al.,    )
                              )
           Plaintiffs,        )
                              )
    v.                        )    Civil Action No. 04-1213 (PLF)
                              )
GOVERNMENT EMPLOYEE INSURANCE  )
COMPANY,                      )
                              )
           Defendant.         )
                              )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiffs' motion for notice to potential collective action members and defendant's motion for limited discovery relating to plaintiffs' motion for notice of collection action.[1] Upon consideration of plaintiffs' motion for notice, defendant's opposition, and plaintiffs' reply and GEICO's motion for expedited discovery and plaintiffs' opposition, the Court concludes that plaintiffs' motion for notice should be granted and that defendant's motion for discovery prior to responding to plaintiffs' motion for notice is therefore moot.

This case is brought in part under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, et seq. The FLSA allows employees to pursue an action in a representative capacity on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). The FLSA

---

[1]    Plaintiffs' motion for notice also included a motion for class certification with respect to the New York state law claims. Defendant has already filed a motion to dismiss the state law claims as well as a motion for discovery prior to responding to plaintiffs' motion for class certification. The issues surrounding the New York state law claims and class certification will be addressed later in a separate opinion.

requires that "no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Plaintiffs seek to give notice of this lawsuit to other similarly situated persons to allow them to join this lawsuit and proceed as a collection action as authorized by Section 216(b) of the FLSA.

Because the Court has the authority to order defendant to produce the names and addresses of all individuals employed as Auto Damage Adjusters, the "central issue becomes whether plaintiff has adequately demonstrated that potential class members are similarly situated." See Robinson-Smith v. GEICO, 2001 U.S. Dist. LEXIS 25516, *5 (D.D.C. Nov. 16, 2001) ("Robinson-Smith"). A number of courts have utilized a two-tiered approach to certification determinations under Section 216(b), in which the trial court first determines at the "notice stage" whether notice of the action should be given to potential class members and then, if necessary, revisits the issue later. See id. The standard at the notice stage is more lenient and plaintiffs can demonstrate that they are similarly situated by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Plaintiff maintains that there can be "no serious question" that named plaintiffs Linsday and McGruder are "similarly situated" to other GEICO Auto Damage Adjusters and Resident Auto Damage Adjusters. See Plaintiffs' Motion for Notice to Potential Collective

2

Action Members and Class Certification and for Expedited Consideration ("Pl. Mot.") at 4.[2]

Plaintiff argues that this Court has previously found Auto Damage Adjusters to be similarly

situated in Robinson-Smith. See id. Defendant has requested limited discovery to determine

whether the named plaintiffs are "similarly situated" for purposes of Section 216(b) and argues

that they are not. See GEICO's Expedited Motion for Discovery Prior to Responding to

Plaintiffs' Motion for Collective Action and Class Certification ("GEICO Disc. Mot.") at 1-2.[3]

Defendant maintains that named plaintiff Robert McGruder was placed on a performance

improvement plan because he was not completing his work in a timely manner and that named

plaintiff Christine Lindsay resigned because she could not keep up with her workload. See id. at

2. Defendant argues that although in Robinson-Smith both sides were willing to treat Mr.

Robinson-Smith as "more or less representative," the same is not true here. Id. at 3.[4]  The Court

is not convinced that the mere fact that the named plaintiffs allegedly had difficulty meeting

---

[2]      Plaintiffs also assert that time is of the essence because the statute of limitations is
running against the putative class members. See id. at 9.

[3]      Defendant has, however, filed an opposition to plaintiff's motion for notice without
the benefit of discovery. See GEICO Opposition to Motion for Notice to Potential Collective Action
Members and Class Certification.

[4]      Defendant also argues that collective action notice should be denied because this
action is duplicative of Robinson-Smith and the named plaintiffs had the opportunity to participate
in Robinson-Smith, but declined to do so. See Def. Opp. at 1. Defendant maintains that because the
purpose of a collective class action under Section 216(b) is to avoid "a multiplicity of duplicative
suits" and to set "cut off dates to expedite the disposition of the action," Hoffmann-La Roche v.
Sperling, 493 U.S. 165, 170, 172 (1989), permitting the named plaintiffs to litigate this case as a
collective action would conflict with these goals. See Def. Opp. at 4. The Court disagrees.
Defendant cites no law for the proposition that once one collective action has been approved, a
subsequent collective action directed toward the same pool of plaintiffs cannot be brought. Even if
the number of individual actions would be small, a second collective action still helps to avoid a
"multiplicity of duplicative suits."

3

GEICO performance standards necessarily means that they are not "similarly situated" to other auto damage adjusters for purposes of determining their status as exempt or non-exempt. Given both this Court's decision in Robinson-Smith and plaintiffs' allegations in their complaint, the Court concludes that it is appropriate to grant plaintiffs' motion for collective action notice in this matter.

Defendant further requests that, if notice is granted, that it be limited to auto damage adjusters who did not receive notice in Robinson-Smith because they were not employed by GEICO at the time the notice was distributed. See id. at 2. The Court is not persuaded by this argument. Although it is, in fact, duplicative to notify again those auto damages adjusters who chose not to take part in Robinson-Smith, this is a new case and it would be inappropriate to exclude those potential plaintiffs who declined to take part in Robinson-Smith.

Plaintiff seeks notice in a form substantively identical to that authorized by this Court in Robinson-Smith, but including reference to the Court's decision in Robinson-Smith. See Pl. Mot. at 4; see also Robinson-Smith v. GEICO, 323 F. Supp. 2d 12 (D.D.C. 2004). Defendants suggest that if the Court authorizes notice, the notice should also include information stating that "(a) Robinson-Smith is not determinative of this case, and (b) the Court has certified Robinson-Smith for interlocutory appeal in light of the fact that, *inter alia*, substantial grounds for differences of opinion exist." See Def. Opp. at 7. The Court agrees that it would be inappropriate to notify potential plaintiffs of this Court's decision in Robinson-Smith without also explaining the procedural posture of that case. Accordingly, it is hereby

ORDERED that plaintiffs' motion for notice to potential collection action members and class certification [8] is GRANTED in part and DEFERRED in part; plaintiffs'

4

motion is GRANTED with respect to their motion for notice; plaintiffs' motion for class

certification is DEFERRED pending resolution of defendant's motion to dismiss the state law

claims; it is

FURTHER ORDERED that defendant shall provide plaintiffs with the names and

last known addresses of all persons employed by defendant as auto damage adjusters at any time

between August 26, 2000 and the date of this Order. Plaintiffs shall submit a proposed notice to

the Court that is substantially similar to the notice approved by this Court in Robinson-Smith v.

GEICO, Civil Action No. 01-1340 (D.D.C.). The notice shall also include reference to this

Court's decision in Robinson-Smith and shall indicate that the Court has certified that decision

for interlocutory appeal; it is

FURTHER ORDERED that defendant's motion for discovery prior to responding

to plaintiffs' motion for collective action and class certification [11] is DENIED in part as moot;

defendant's motion for discovery prior to responding to plaintiffs' motion for class certification

is DEFERRED pending resolution of defendant's motion to dismiss the state law claims; and it is

FURTHER ORDERED that plaintiffs' motion for expedited consideration of

plaintiffs' motion for notice to potential collective action members [22] is GRANTED.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAULA ROE-MIDGETT, Individually and as        )
Collective Action and Class Action Representative  )
and PAUL DECKER, Individually and as Collective )
Action and Class Action Representative,        )
                                           )
             Plaintiffs,                    )
                                           )
v.                                             )        No.  04-CV-4051-DRH
                                           )
CC SERVICES, INC.,                             )
                                           )
             Defendant.                     )

## JOINT STIPULATED
## CERTIFICATION OF COLLECTIVE ACTION

Plaintiffs Paula Roe-Midgett and Paul Decker and Defendant CC Services, Inc. ("CCSI")

hereby stipulate that each class below individually meets the requirements under 29 U.S.C.

§ 216(b) for certification of a collective action:

**CLASS I.**    All persons employed by CC Services, Inc. in Arizona, Alaska, Colorado, Illinois,

Kansas, Missouri, Nevada, Oklahoma, Oregon, and Washington as a Field Claims

Representative II (Job Code F415) at any time within the past three (3) years.

**CLASS II.**    All persons employed by CC Services, Inc. in Arizona, Alaska, Colorado, Illinois,

Kansas, Missouri, Nevada, Oklahoma, Oregon, and Washington as a Field Claims

Representative III (Job Code F416) at any time within the past three (3) years.

**CLASS III.**    All persons employed by CC Services, Inc. in Arizona, Alaska, Colorado, Illinois,

Kansas, Missouri, Nevada, Oklahoma, Oregon, and Washington as a Material

Damage Appraiser II (Job Code F417) at any time within the past three (3) years.

**CLASS IV.**    All persons employed by CC Services, Inc. in Arizona, Alaska, Colorado, Illinois, Kansas, Missouri, Nevada, Oklahoma, Oregon, and Washington as a Property Specialist I (Job Code F421) at any time within the past three (3) years.

This stipulation only applies to the issues involved in the certification of a collective action, and the parties neither stipulate to the use of a particular statute of limitations nor stipulate to any other matters involving the merits of this action.

Respectfully submitted,

WINTERS, BREWSTER, CROSBY & SCHAFER          SONNENSCHEIN NATH & ROSENTHAL LLP

By:    _____/s/ Thomas F. Crosby_____          By:    _____/s/ Robert W. Schmeider II_____
        Thomas F. Crosby                                   Robert W. Schmieder II
        111 West Main, P.O. Box 700                    Roger K. Heidenreich
        Marion, IL 62959                                    One Metropolitan Square, Suite 3000
        (618) 997-5611 Telephone                       St. Louis, Missouri 63102
        (618) 997-6522 Facsimile                        (314) 241-1800 Telephone
                                                                  (314) 259-5959 Facsimile

ASCHEMANN KELLER LLC                          Attorneys for Defendant CC Services, Inc.

By:    _____/s/ Dale J. Aschemann_____
        Dale J. Aschemann
        108 West Jackson
        Marion, IL 62959
        (618) 998-9988
        (618) 998-0796

Attorneys for Plaintiffs

- 2 -

23156174