**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------------- X
JAMES NEARY, individually and          :
on behalf of other similarly situated  :
individuals,                           :
                                       :
            Plaintiffs,                :
                                       :
      v.                               :      Case No. 3:06 CV 0536 (JBA)(JGM)
                                       :
METROPOLITAN PROPERTY AND              :      ELECTRONICALLY FILED
CASUALTY INSURANCE COMPANY,            :
                                       :
            Defendant.                 :
                                       :
------------------------------------- X
```

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**MORGAN, LEWIS & BOCKIUS LLP**
Christopher A. Parlo (CT 04700)
Carrie A. Gonell (CT 24336)
101 Park Avenue
New York, N.Y.  10178
(212) 309-6062
(212) 309-6001 (facsimile)

**DAY PITNEY LLP**
Victoria Woodin Chavey (CT 14242)
Stacy Smith Walsh (CT 25252)
City Place I
Hartford, CT 06103
(860) 275-0467
(860) 275-0343 (facsimile)

Counsel for Defendant Metropolitan
Property and Casualty Insurance Company

I.     LEGAL STANDARD FOR SUMMARY JUDGMENT.................................................. 8

II.    AS A REPRESENTATIVE OF THE COMPANY WITH FULL NEGOTIATING
       AND SETTLEMENT AUTHORITY, PLAINTIFF WAS PROPERLY
       CLASSIFIED AS EXEMPT FROM THE OVERTIME PROVISIONS OF
       FEDERAL AND STATE LAW ........................................................................ 9

       A.     The DOL Has Made Clear That Insurance Claims Representatives, Like
              Plaintiff, Perform Administrative Duties And Are Exempt From The
              Overtime Provisions Of The FLSA ...................................................... 9

              1.     The Legal Requirements Of The Administrative Exemption................. 10

              2.     The DOL Has Expressly Stated, In Unequivocal Terms, That
                     Plaintiff Is Exempt ................................................................. 11

              3.     Plaintiff Was Paid On A Salary Basis....................................... 12

              4.     Plaintiff's Primary Duty Was Office Or Non-Manual Work That
                     Was Directly Related To The Company's General Business
                     Operations................................................................................ 13

                     a.     Plaintiff Performed Administrative And Not Production
                            Work In Servicing The Company's Insurance Policies.............. 15

                     b.     The Production/Administrative Dichotomy Is Inapplicable
                            In This Case ............................................................ 19

                     c.     Plaintiff's Work Was Of Substantial Importance To The
                            Company's Operations................................................. 21

       B.     Plaintiff's Duties Required The Daily Use Of Discretion And Independent
              Judgment ....................................................................................... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alvarez v. IBP, Inc.,
    339 F.3d 894 (9th Cir. 2003) ...................................................................14

Am. Tel. & Tel. Co. v. United States,
    299 U.S. 232, 235-37 (1936) ...................................................................14

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).................................................................................8

Batterton v. Francis,
    432 U.S. 416 (1977)...........................................................................14, 15

Blue v. The Chubb Group,
    No. 03 C 6692, 2005 WL 1667794 (N.D. Ill. July 13, 2005) .....................................22

Blinston v. Hartford  Accident & Indem. Co.,
    441 F.2d 1365 (8th Cir. 1971) ...................................................25, 26, 27, 28

Bothell v. Phase Metrics, Inc.,
    299 F.3d 1120 (9th Cir. 2002) ...........................................................8, 20

Chang v. Safe Horizon,
    2005 U.S.Dist. LEXIS 19015 (S.D.N.Y. Sept. 1, 2005)................................................3

Cheatham v. Allstate Ins. Co.,
    465 F.3d 578 (5th Cir. 2006) ............................................11, 14, 16, 17, 18, 25, 26, 27

Chevron, U.S.A. Inc. v. Natural Res. Def. Council,
    467 U.S. 837 (1984)................................................................................10

Edmund v. Crawford & Co., Inc.,
    No. Civ.A. 195-CV-1310JOF, 1997 WL 33330959 (N.D. Ga. Mar. 31, 1997) ....15, 18

Edwards v. Audubon Ins. Group, Inc.,
    No. 3:02-1618 (WS), 2004 WL 3119911 (S.D. Miss. Aug. 31, 2004)........................11

In re Farmers Ins. Exch.,
    466 F.3d 853 (9th Cir. 2006) ......................................2, 8, 10, 11, 14, 16-18, 21, 23-28

Haywood v. N. Am. Van Lines, Inc.,
    121 F.3d 1066 (7th Cir. 1997) .................................................13, 15, 17, 21, 23, 26, 28

Hogan v. Allstate Ins. Co.,
    210 F.Supp.2d 1312 (M.D. Fla. 2002).......................................................17

Icicle Seafoods, Inc. v. Worthington,
    475 U.S. 709 (1986)............................................................................8

Jastremski v. Safeco Ins. Cos.,
    243 F. Supp. 2d 743 (N.D. Ohio 2003)........................10, 14, 17, 18, 22, 23, 25, 26, 28

Knight v. U.S. Fire Ins. Co.,
    804 F.2d 9 (2d Cir. 1986)..................................................................8

Marting v. Crawford & Co.,
    No. 00 C 7132, 2006 WL 681060 (N.D. Ill. March 14, 2006) .................16, 17, 27, 28

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).........................................................................8

Moore v. J.T. Roofing, Inc.,
    94 Fed. Appx. 377 (7th Cir. 2004)..............................................................3

Munizza v. State Farm Mut. Auto Ins. Co.,
    No. C94-5345RJB, 1995 U.S.Dist. LEXIS 22362 (W.D. Wash. May 12,
    1995) .......................................................................... 18, 23

Munizza v. State Farm Mut. Auto Ins. Co.,
    No. 95-35794, 1996 WL 711563 (9th Cir. Dec. 5, 1996)...................................... 11-12

Murray v. Ohio Casualty Corp.,
    No. 2:04-CR-539, 2005 WL 2373857 (S.D. Ohio Sept. 27, 2005). ...............16, 17, 22

McLaughlin v. Nationwide Mut. Ins. Co.,
    No. 02-6205 (TC), 2004 WL 1857112 (D. Or. Aug. 18, 2004).............................10,11

Palacio v. Progressive Ins. Co.,
    244 F. Supp. 2d 1040 (C.D. Cal. 2002) ......................11, 13, 14, 17, 18, 21, 22, 25, 26

Reich v. American Int'l Adjustment Co.,
    902 F.Supp. 321 (D. Conn. 1994)...........................................................26

Reich v. John Alden Life Ins. Co.,
    126 F.3d 1 (1st Cir. 1997)...........................................................17, 21, 23

Reich v. State of N.Y.,
    3 F.3d 581 (2d Cir. 1993)..................................................................20

Renfro v. Ind. Mich. Power Co.,
    370 F.3d 512 (6th Cir. 2004) ...............................................................20

Roe-Midgett v. CC Servs., Inc.,

No. 04 CV 4051 (DRH), 2006 WL 839443 (S.D. Ill. March 29, 2006).14,17, 26-28, 30

Rutlin v. Prime, Succession, Inc.,
  220 F.3d 737 (6th Cir. 2000) ......................................................................10

Scott v. Aetna Services,
  210 F.R.D. 261 (D. Conn. 2002)..................................................................9

Skidmore v. Swift & Co.,
  323 U.S. 134 (1944)....................................................................................10

Trask v. Franco,
  446 F.3d 1036 (10th Cir. 2006) ...................................................................3

Udall v. Tallman,
  380 U.S. 1 (1965)........................................................................................14

United States v. Nixon,
  418 U.S. 683 (1974)....................................................................................14

Webster v. Pub. Sch. Employees of Wash., Inc.,
  247 F.3d 910 (9th Cir. 2001) ..................................................10, 14,15, 20

## STATE CASES

Ford v. Allstate Ins. Co.,
  No. CV-020389937, 2005 Conn.Super. LEXIS 76 (Conn. Super. Ct. Jan. 5,
  2005) .............................................................................................................9

Mertes v. Milardo Photography, Inc.,
  No. PJR-CV-030101233S, 2003 Conn. Super. LEXIS 2580 (Conn. Super. Ct.
  Sept. 10, 2003) .............................................................................................9

Scott Wetzel Servs., Inc. v. N.Y. State Bd. of Indus. Appeals,
  682 N.Y.S.2d 304 (N.Y. App. Div. 1998) .................................................21

Spence v. Grange Mutual Casualty Insurance Co.,
  No. 81AP-284, 1981 WL 3378 (Ohio Ct. App. July 30, 1981) .......................18, 26, 28

# FEDERAL STATUTES

29 U.S.C. § 207(a) .........................................................................................9

29 U.S.C. § 213(a)(1) ...................................................................................10

29 U.S.C. § 216 (b) .........................................................................................1

29 C.F.R. § 541.200 ...................................................................11, 12, 14, 24

29 C.F.R. § 541.201(b) .................................................................................13

29 C.F.R. § 541.202 ...........................................................................24, 28, 32

29 C.F.R. § 541.203(a) (2006) ............................................................ 12, 24-27

29 C.F.R. § 541.205 ..................................................................... 13-18, 21, 22

29 C.F.R. § 541.207(a).................................................................................24

29 C.F.R. § 541.214(a).................................................................................11

29 C.F.R. §§ 541.2(a)...................................................................11, 12, 24

29 C.F.R. § 541.602(a) (2006); 29 C.F.R. § 541.118 ....................................12

29 C.F.R. § 541 ..........................................................................................10

29 C.F.R. § 54.203 ......................................................................................11

68 Fed.Reg. 15,560, 15,566 (March 31, 2003) ....................................... 19-20

69 Fed.Reg. 22,122, 22,145 (April 23, 2004) .........................................10, 20

69 Fed.Reg. 22,140 (April 23, 2004) .............................................................20

# STATE STATUTES

Conn. Gen. Stat. § 31-58.........................................................................2, 9, 10

Conn. Agencies Regs. § 31-60-15 ...............................................................13

Defendant Metropolitan Property and Casualty Insurance Company ("Defendant" or the "Company") submits this Memorandum of Law in support of its Motion for Summary Judgment, under Fed. R. Civ. P. 56, to dismiss the claims of Plaintiff James Neary ("Plaintiff") in their entirety.

Plaintiff is a former automobile claims appraiser/adjuster for the Company whose primary job duties were to represent the Company in all of his dealings with customers and body shops, assess the value and negotiate the settlement of insurance claims for automobile damage, and pay settlements for up to $20,000 on the Company's behalf.  Plaintiff did this primarily out of his home and at customer locations, and, therefore, with minimal to no supervision.  On or about January 23, 2006, Plaintiff was terminated for dishonesty.  Prior to being terminated, Plaintiff never requested overtime pay from the Company.  In this action, however, Plaintiff now claims he is entitled to overtime pay for a period of time during which he admits he was simultaneously working another full-time weekday job for another employer.

Plaintiff alleges that he is entitled to overtime pay because the Company violated the Fair Labor Standards Act ("FLSA") by misclassifying its automobile claims appraisers/adjusters as exempt from overtime.[1]  Plaintiff seeks to bring an opt-in nationwide collective action on his FLSA claim, under 29 U.S.C. § 216(b), on behalf of all other current and former automobile "Associate Appraisers," "Appraisers" and "Senior Appraisers" (together the "automobile claims appraisers/adjusters"), in offices all across the country and at any time after April 6, 2003 (the "putative class").  Compl. ¶¶ 1, 5, 12.[2]  Plaintiff simultaneously seeks to bring a multi-state opt-out class action under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") on behalf of all current and former automobile claims appraisers/adjusters working in Connecticut, and in

---

[1] Plaintiff's job title at the end of his employment was "Appraiser," although during various time periods his job title was also "Adjuster," as he admits in the Complaint (Docket No. 1). ("Compl.") ¶¶ 2, 14.

every other state in which the Company employs such individuals, claiming that the Company

violated Connecticut General Statutes § 31-58 et seq., and the other wage and hour laws of each

state in which it employs such individuals, by misclassifying them as exempt from overtime.

Defendant is entitled to summary judgment, however, because the material, undisputed

facts, established by Plaintiff's own admissions, demonstrate that Plaintiff was exempt under the

"administrative" exemption of the FLSA and the parallel Connecticut state statute.  Therefore,

Plaintiff is not entitled to overtime.

Plaintiff was an exempt administrative employee because:

- Plaintiff was paid on a salary basis and earned well in excess of $455 per week;

- Plaintiff's primary duties consisted of the performance of office or non-manual work
  directly related to the Company's general business operations and directly related to
  the Company's success, including, inter alia, servicing the Company's insurance
  policies, representing the Company with its customers and body shops, determining
  the amount of damage to a vehicle, determining to what extent the damage pre-
  existed the accident, negotiating with insureds and repair shops, identifying and
  reporting potential fraud, deciding whether to pay and the amount of payment to
  make on a claim, deciding on whether a vehicle was a total loss, making
  recommendations on claims including settlement amounts, and issuing payments to
  customers and body shops; and

- Plaintiff's work – including making decisions about the value of insurance claims and
  paying settlements in amounts up to $20,000 – required the exercise of discretion and
  independent judgment on matters of substantial importance to the Company.

The conclusion that Plaintiff was an exempt employee is compelled by:  (1) the dispositive

Regulations, as well as numerous opinion letters, of the U.S. Department of Labor ("DOL");

(2) numerous recent federal court decisions – including the Ninth Circuit's recent decision in In

re Farmers Ins. Exch., 466 F.3d 853, 860 (9th Cir. 2006)- in which claims appraisers/adjusters

with virtually identical job duties were found to be clearly exempt and summary judgment was

granted to the employer; and (3) the undisputed facts in this case as established by Plaintiff's

---

[2] Plaintiff filed an Amended Complaint on April 20, 2006, and, on December 21, 2006 filed a

own admissions.  Defendant, therefore, respectfully requests that the Court enter summary

judgment in its favor and dismiss Plaintiff's claims in their entirety.[3]

## STATEMENT OF UNDISPUTED FACTS

All of the undisputed facts which support Defendant's Motion for Summary Judgment

are contained in Defendant's Rule 56(a)1 Statement of Material Facts Not In Dispute ("Def.

56(a)1 Stmt.").  For the Court's convenience, a summary of the facts is set forth below.

The Company is in the business of designing and creating insurance policies and selling

those policies to their customers.  See Pl. Dep. at 144-45.[4]  It is the sale of these insurance

policies which produces the Company's revenue.  Id.  Plaintiff did not design, create or sell

insurance policies.  See Pl. Dep. at 144-45.  Instead, Plaintiff handled insurance *claims* which

produce no revenue for the Company and are simply a cost of doing business.  Id.

---

motion seeking leave to file a Second Amended Complaint (Docket No. 32).

[3]  While Plaintiff has indicated that Defendant should not be permitted to bring this motion at
this time because he still needs discovery, that argument is without merit. First, Defendant gave
Plaintiff an opportunity to take whatever discovery Plaintiff needed to respond to the motion and
Plaintiff refused to participate.  See Defendant's Motion to Stay Plaintiff's Motion to Proceed as
a Collective Action and to Authorize Notice to Class Members Pending Resolution of
Defendant's Motion for Summary Judgment, at 3-4. Second, this motion is based upon
Plaintiff's own admissions and documents that he has had in his possession for months.
Accordingly, he cannot claim there are relevant facts of which he was not aware, or that he
would need to respond to this motion.  See Trask v. Franco, 446 F.3d 1036, 1041-42 (10th Cir.
2006) (affirming grant of summary judgment and denying 56(f) application because plaintiff's
affidavit failed to identify "probable facts not available" and to "state with specificity how the
additional material will rebut the summary judgment motion.");  see also Chang v. Safe Horizon,
2005 U.S. Dist. LEXIS 19015, *26 n.1 (S.D.N.Y. Sept. 1, 2005) (granting summary judgment to
the employer and holding that plaintiff's "bald assertion" that the documents requested were
necessary, was insufficient to carry her burden under Rule 56(f));  see also Moore v. J.T. Roofing,
Inc., 94 Fed. Appx. 377, 379-80 (7th Cir. 2004) (denying request for additional discovery where
the plaintiff asserts only "vague assertions or generalities" of additional discovery and plaintiff
had the opportunity to obtain the items on his own).  All unreported decisions are attached as Ex.
A to the Affidavit of Christopher A. Parlo ("Parlo Aff.").

[4]  Selected pages from Plaintiff's deposition transcript ("Pl. Dep.") are attached sequentially as
Ex. B to the Parlo Aff.

Plaintiff alleges that the Company employed him in its Claims Department, working through its Rocky Hill, Connecticut Field Claims Office ("Rocky Hill").  Compl. ¶ 14.  Plaintiff was employed as a salaried automobile claims appraiser/adjuster, and was paid a guaranteed salary of no less than $455 per week.  Pl. Dep. at 142-44.  In fact, Plaintiff was paid approximately $51,000 dollars a year in predetermined amounts.  Id.

Plaintiff was employed from January 1993, until his termination on or about January 23, 2006.  Compl. ¶¶ 2, 14; Pl. Dep. at 36, 136.  Plaintiff was terminated for dishonesty after he had a car accident in a company vehicle (Pl. Dep. at 135), failed to report the accident pursuant to company policy, and lied about the accident in an attempt to cover up the true nature of the accident.[5]  Parlo Aff., Ex. C.  Specifically, after Plaintiff applied for unemployment compensation benefits following his termination, the Appeals Review Board reviewed his application, and denied him unemployment benefits, specifically finding that Plaintiff was terminated for his "dishonesty" and a resulting "loss of trust" in him.  Id. at 4.

Plaintiff's primary job duties included representing the Company in handling claims that were made, inspecting damaged automobiles, determining the necessary replacements and repairs, estimating the cost of repairs, and negotiating with insureds and repair shops regarding, inter alia, the cost of the repairs.  Pl. Dep. at 96; Compl. ¶ 14.  Plaintiff had the ability to schedule his day and to make his own appointments.  Pl. Dep. at 222-23.  Plaintiff regularly conducted a visual inspection of damaged vehicles, during which he analyzed and determined the amount of damage to a vehicle.  Pl. Dep. at 87.  Plaintiff testified that "[e]very case [was] a different scenario."  See Pl. Dep. at 68-69, 99; Compl. ¶ 14.  For each automobile, Plaintiff

---

[5] A copy of the Decision of the Employment Security Appeals Division Board of Review of the State of Connecticut Department of Labor ("Appeals Review Board") ("Bd. of Rev. Dec.") is attached as Ex. C to the Parlo Aff.

determined to what extent any of the damage pre-existed the accident (damage could be "a ding, a dent, a scratch, rust, anything that would take away from the value of the car"). Pl. Dep. at 88-90.

The cost of repairs, and decisions regarding whether to repair or replace a part or vehicle, was, in Plaintiff's words, a "judgment call" that Plaintiff had to make. See Pl. Dep. at 179-80, 243. Moreover, part of Plaintiff's analysis of damages included determining whether a vehicle was a total loss. See Pl. Dep. at 85; Gallagher Dep. at 80-81.[6] Plaintiff was also responsible for detecting potential fraud. See Pl. Dep. at 98-100. Specifically, Plaintiff had to analyze the "complete realm of repair" and, where suspicious, look at "a number of things." Id. For example, if an insured said an accident was caused by hitting a deer but, after Plaintiff's investigation, and analysis Plaintiff noted "no visible damage of deer hair" – it would be up to Plaintiff to determine whether the accident could have occurred as alleged by the claimant or whether the claimant was lying. See id. Plaintiff had to closely analyze and inspect damage as his determination and analysis was "not just clear-cut." Id.

Additionally, Plaintiff would determine "on the spot," without consulting with anyone, his estimate for the repair time for a damaged vehicle. See Gallagher Dep. at 71-73; Pl. Dep. 79-80; 261-62. When negotiating with insureds and body shops over repair costs and time, Plaintiff was also empowered to and did make concessions, or subjective reductions in the amount of costs and time, on a case-by-case basis. See Pl. Dep. at 72-73, 265-66, 276-77; Gallagher Dep. at 74-77. For example, on one occasion, Plaintiff appraised damage at a particular dollar amount and, without consulting anyone, reduced the dollar amount by approximately 20% as a concession when preparing the estimate. Pl. Dep. at 265-66. Plaintiff also negotiated labor rates

---

[6] Selected pages from James A. Gallagher's deposition transcript ("Gallagher Dep.") are attached sequentially as Ex. D to the Parlo Aff.

and repair times with repair shops.  Pl. Dep. at 70-73, 78.  Moreover, Plaintiff would negotiate and make concessions with insureds.  Pl. Dep. at 276-77.  Plaintiff was not limited in the amount of the concessions he could make.  Pl. Dep. at 253.  In addition to concessions, Plaintiff also had to analyze and determine on a case-by-case basis whether to provide an appearance allowance (i.e., providing the claimant with the option of a dollar amount to keep a damaged but workable part rather than replacing the part) and for betterment (i.e., the amount a part is valued after its everyday "wear and tear").  Id.  Plaintiff would determine these amounts based upon the amount of the damage, the value of the part and his knowledge and experience.  Id.

Plaintiff testified that two reasonable automobile claims appraisers/adjusters, each applying the Company's policies, could reach different conclusions about the value of the same claim.  See Pl. Dep. at 89, 91-92.  For example, according to Plaintiff, two automobile claims appraisers/adjusters looking at the same vehicle could come to two different conclusions about the age, level and cost of the damage in question, and therefore, have two different estimates.  Id.  Confirming this example of independent judgment, during one exercise sponsored by the Company at its Rocky Hill Field Claims Office, with which Plaintiff was affiliated, the Company brought in a damaged vehicle and asked Plaintiff and approximately eleven other experienced automobile claims appraisers/adjusters "to go out and write new damages, old damages, [and] come up with a figure on what [they] thought would be need[ed] to repair that vehicle on an individual basis" – in other words, to prepare an estimate on the vehicle.  Pl. Dep. at 91.  The automobile claims appraisers/adjusters did not agree at all, and, in fact, "[t]he estimates [they] gave] varied between $1,200 and $12,000"—a difference of 1,000 per cent.  Id.  On another occasion, Plaintiff inspected a vehicle that was, in his opinion, so damaged that it was an "obvious total loss" and beyond repair.  Pl. Dep. at 248-50, 275-76.  Plaintiff's supervisor,

however, disagreed with him and determined that the vehicle was, in fact, repairable.  Pl. Dep. at 275-76.

Plaintiff was typically the sole representative of the Company in his daily dealings and communications with customers.  Pl. Dep. at 67, 82, 85.  During these interactions, Plaintiff's "ability to communicate with the customers … [and his] knowledge of the auto body business" is what made him, in his own opinion, good at his job.  Pl. Dep. at 67.  Plaintiff's "good" customer service skills were exemplified by "minimal [customer] complaints".  Pl. Dep. at 82.  Plaintiff interacted and negotiated not only with claimants and body shops, but also with insureds' attorneys.  Pl. Dep. at 257-58.

While performing his job duties, Plaintiff primarily functioned alone in his role, and would travel to see customers and body shops in person to perform his duties.[7]  Pl. Dep. at 103-05.  Plaintiff testified that he worked "independently."  Pl. Dep. at 243.  Approximately once every couple of months, Plaintiff was accompanied by a supervisor in a "ride-along", in which a supervisor accompanied him on client and repair shop visits.  See Pl. Dep. at 107-08.

Once Plaintiff evaluated the damage, determined its value, and negotiated a settlement with the insured and/or body shop, Plaintiff's authority to issue a check to a claimant on behalf of the Company went as high as $20,000.  Id. at 155, 277.  Plaintiff appraised claims, however, of up to $35,000 in value, making recommendations to his supervisor when the value exceeded his authority of $20,000.  Id.  His recommendations were almost always accepted.  Id. at 110-11.  Not surprisingly, in settling claims for up to $35,000, Plaintiff wrote in a Self-Assessment Form[8] that he could affect "[the Company's] bottom line."  Pl. Dep. at 96; Parlo Ex. E.

---

[7]  In addition to these duties, Plaintiff also testified on behalf of the Company on several occasions, once appearing in the place of Plaintiff's supervisor.  See Pl. Dep. at 174-75; 245-46.

[8]  A copy of Plaintiff's Self-Assessment Form, dated November 26, 2001 is attached as Ex. E to the Parlo Aff.

Plaintiff filed this case in the United States District Court for the District of Connecticut on April 6, 2006.  Prior to being terminated, Plaintiff never requested overtime pay from the Company.  Pl. Dep. at 149.

## ARGUMENT

## I.    LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is to be granted where, as here, the record evidence shows "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Stated another way, if the evidence in the record "could not lead a . . . trier of fact to find for the non-moving party, there is no genuine issue for trial," and the motion should be granted.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  In turn, there are no factual issues for trial unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "[M]ere speculation or conjecture," no matter how sincerely felt, is insufficient to withstand a motion for summary judgment.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

In cases under the FLSA, the ultimate decision on whether the duties and activities of an employee's work qualify as "administrative" is a question of law to be resolved by the Court. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986); Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002) (same).  Courts in this setting, must, however, "give deference to the DOL's interpretation of its own regulations."  In re Farmers Ins. Exch., 466 F.3d 853, 860 (9th Cir. 2006).  Here, even if all of the facts are viewed in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Plaintiff was properly classified as an exempt administrative employee under the overtime requirements of the FLSA and its parallel

Connecticut state statute.[9]  Accordingly, this Motion should be granted.

II.    **AS A REPRESENTATIVE OF THE COMPANY WITH FULL NEGOTIATING AND SETTLEMENT AUTHORITY, PLAINTIFF WAS PROPERLY CLASSIFIED AS EXEMPT FROM THE OVERTIME PROVISIONS OF FEDERAL AND STATE LAW.**

Plaintiff meets the requirements for the administrative exemption and was properly

classified by the Company as an exempt employee.  Plaintiff performed office or non-manual

work directly related to the Company's business, his work was of substantial importance to the

Company's operations, and the completion of his duties required discretion and independent

judgment.  Therefore, Plaintiff is not entitled to overtime under either federal or state law, and

Defendant's Motion for Summary Judgment should be granted in its entirety.

A.    **The DOL Has Made Clear That Insurance Claims Representatives, Like Plaintiff, Perform Administrative Duties And Are Exempt From The Overtime Provisions Of The FLSA.**

Section 7 of the FLSA and analogous provisions of Connecticut state law generally

require employers to pay overtime compensation to any non-exempt employee who works in

excess of forty hours in a regular workweek.  See 29 U.S.C. § 207(a) (2006); Conn. Gen. Stat.

§ 31-58 et seq. (2006).  Section 13(a)(1) of the FLSA, and analogous Connecticut state law

provisions, expressly exempt from this overtime pay requirement, however, any employee who

is paid a salary and works in a "bona fide executive, administrative, or professional capacity."

---

[9]  Plaintiff both lives and was employed by Defendant in Connecticut. Pl. Dep. at 5; Compl. ¶ 2. The Connecticut statute addressing overtime pay substantially incorporates the FLSA's exceptions from coverage.  See Conn. Gen. Stat. § 31-58 et seq. (2006); see also Scott v. Aetna Servs., 210 F.R.D. 261, 263 n.2 (D. Conn. 2002) (noting that "Connecticut's wage and hour law . . . provides wage and overtime guarantees similar to the FLSA and also exempts certain employees from its requirements"); Mertes v. Milardo Photography, Inc., No. PJR-CV-030101233S, 2003 Conn. Super. LEXIS 2580, at **6-7, 13 (Conn. Super. Ct. Sept. 10, 2003) (noting that the administrative and professional exemptions under the FLSA and Connecticut overtime regulations are "virtually identical"); see also Ford v. Allstate Ins. Co., No. CV-020389937, 2005 Conn. Super. LEXIS 76, at **11-12 (Conn. Super. Ct. Jan. 5, 2005) (holding claims representative to be exempt under administrative exemption).

29 U.S.C. § 213(a)(1) (2006); Conn. Gen. Stat. § 31-58 et seq. The administrative exemption is the only exemption relevant to this case.

        1.    The Legal Requirements Of The Administrative Exemption.

Although the term "administrative" employee is not defined in the FLSA, the Secretary of Labor has defined the terms in regulations promulgated under an express delegation of legislative authority granted in that Act. See 29 U.S.C. § 213(a)(1) (stating that the terms contained in the exemptions are as "defined and delimited" by the "regulations of the Secretary"); see also 29 C.F.R. § 541 et seq. (2006). These regulations are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. See Chevron, U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-44 (1984); see also Webster v. Pub. Sch. Employees of Wash., Inc., 247 F.3d 910, 914 (9th Cir. 2001) (holding that the Secretary of Labor has broad discretion to define and delimit the scope of the FLSA exemptions); Jastremski v. Safeco Ins. Cos., 243 F. Supp. 2d 743, 751 (N.D. Ohio 2003) (holding that the regulations "must be given controlling weight" (quoting Rutlin v. Prime Succession, Inc., 220 F.3d 737, 741 (6th Cir. 2000))).[10]

In August of 2004, the DOL issued new Regulations (the "Regulations") regarding the administrative exemption. Those Regulations made no substantial changes to the existing regulations for the administrative exemption, but did attempt to clarify application of the exemption. See 69 Fed. Reg. 22,122, 22,145 (Apr. 23, 2004); In re Farmers Ins. Exch., 466 F.3d at 859 (noting that the current Regulations do "not represent a change in the law."); see also McLaughlin v. Nationwide Mut. Ins. Co., No. 02-6205 (TC), 2004 WL 1857112, at *4 n. 2 (D.

---

[10]  In addition to the Regulations, the DOL's interpretive guidance, although not conclusive, has the "power to persuade," and at times has been given considerable or decisive weight. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); Webster, 247 F.3d at 914 (holding that the

Or. Aug. 18, 2004) (finding that the Regulations interpreting the administrative exemption, 29 C.F.R. § 541.200 et seq. (2006), were "essentially the same" as the regulations prior to 2004); Edwards v. Audubon Ins. Group, Inc., No. 3:02-1618 (WS), 2004 WL 3119911, at *4 (S.D. Miss. Aug. 31, 2004) (same); see also Wage and Hour Opinion Letter, FLSA 2005-25, (Aug. 26, 2005) ("There were no substantive changes in the primary duty test requirements for the administrative exemption") (attached as Parlo Aff., Ex. F).

Under the Regulations in effect both before and after August of 2004, to satisfy the administrative employee exemption, the Company needs to establish only three factors: (1) that Plaintiff was paid a salary of at least $455 per week; (2) that Plaintiff's primary duty consisted of the performance of office or non-manual work directly related to the Company's management policies or general business operations; and (3) that Plaintiff's work included the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(2)-(3) (2006); 29 C.F.R. §§ 541.2(a)(1), 541.2(e)(2), 541.207(a), and 541.214(a) (2003); see also In re Farmers Ins. Exch., 466 F. 3d at 859; Cheatham v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006); Palacio v. Progressive Ins. Co., 244 F. Supp. 2d 1040, 1045 (C.D. Cal. 2002); Wage and Hour Opinion Letter, FLSA 2002-11 (Nov. 19, 2002) (attached as Parlo Aff., Ex. G). Plaintiff clearly meets this test for exemption.

      2.    The DOL Has Expressly Stated, In Unequivocal Terms, That Plaintiff Is Exempt.

In the 2004 Regulations, the DOL included a limited number of examples of employees who clearly "meet the duties requirements for the administrative exemption." See 29 C.F.R. § 541.203; see also Munizza v. State Farm Mut. Auto. Ins. Co., No. 95-35794, 1996 WL 711563, at *4 (9th Cir. Dec. 5, 1996) (holding that the DOL Regulations "specifically identif[y] an

_____

Secretary's regulations have the force of law and the interpretive guidelines are treated with

'insurance claims adjuster' as an example of an exempt administrative employee"). The example states that claims adjusters whose duties "<u>include</u>" some of the ones listed by the DOL meet the duties requirements of the administrative exemption and are exempt. § 541.203(a) provides in full:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . if their duties **include** activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a) (2006)(emphasis added).

As it is undisputed that Plaintiff performed many of the duties contained on the list set forth in § 541.203(a), he is clearly exempt. Even if this Court deemed it necessary to independently review each aspect of the duties requirements, however, Plaintiff met the test for exemption set out in the DOL Regulations.

### 3.    Plaintiff Was Paid On A Salary Basis.

An employee is considered to be paid "on a salary basis…if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) (2006); 29 C.F.R. § 541.118 (2003). In addition, the employee must be paid a salary of not less than $455 per week. 29 C.F.R. § 541.200.[11]

It is undisputed that, as a salaried automobile claims appraiser/adjuster, Plaintiff earned significantly more than $455 per week. Pl. Dep. at 142-44. Specifically, Plaintiff earned

---

deference).

approximately $51,000 annually during his last three years of employment.  Pl. Dep. at 141-42.

It is also undisputed that Plaintiff was paid a predetermined amount regardless of the amount he

worked, and without any improper deductions from his salary.  See id.[12]  Therefore, the first

element of the administrative exemption was easily satisfied.

        4.      Plaintiff's Primary Duty Was Office Or Non-Manual Work That Was
                  Directly Related To The Company's General Business Operations.

Under the current Regulations, in order to satisfy the "directly related" test, the employee

must simply be engaged in the running or "servicing of the business" (as described in the

Regulations).  See 29 C.F.R. § 541.201(b) (2006) (listing "insurance" as an example of an

administrative area of a business where employees' work is directly related to management or

general business operations).  Under the pre-2004 Regulations, the test was divided into two

parts:  (1) that the employee must be engaged in "administrative" rather than "production"

activity (the "administrative/production dichotomy"); and (2) that this administrative activity

must be "of substantial importance" to the management or business operations of the employer.

29 C.F.R. § 541.205(a) (2003)[13]; Palacio, 244 F. Supp. 2d at 1045.  Under either the pre-2004 or

the post-2004 Regulations, Plaintiff meets the test for performing administrative work directly

related to the Company's general business operations.

Plaintiff does not contend that his work was manual labor, or that it was not office work.

---

[11]  The amount was $155 per week under the pre-2004 regulations, 29 C.F.R. § 541.2 (2003).
Under Connecticut law, an employee must be paid a minimum salary of $400 per week to
qualify for the administrative exemption.  Conn. Agencies Regs. § 31-60-15.

[12]  Because he earned substantially more than $250 per week, the "short test" governs whether
Plaintiff was an exempt administrative employee for the period prior to August 23, 2004.
Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1069 (7th Cir. 1997) (holding that if a
plaintiff earns more than $250 per week "the short test . . . governs [the court's] review");
Palacio, 244 F. Supp. 2d at 1045 (same).  For the period after the 2004 Regulations went into
effect, the revised duties test under the new Regulations, which is substantially the same as the
"short test," applies.

[13]  A copy of the pre-2004 DOL regulations are attached as Ex. H to the Parlo Aff.

29 C.F.R. §§ 541.200; 200(a)(1); and 541.203 (2003).  The only question, then, under the second

factor is whether the work performed by Plaintiff was "directly related" to Defendants' general

business operations.

        The requirement that an employee's work be directly related to an employer's

management policies or general business operations "is <u>not</u> limited to persons who participate in

the formulation of management policies or in the operation of the business as a whole".  29

C.F.R. § 541.205(c) (emphasis supplied).  The definition "includes a wide variety of persons

who either carry out major assignments in conducting the operations of the business, or whose

work affects business operations to a substantial degree, even though their assignments are tasks

related to the operation of a particular segment of the business."  <u>Id.</u>

        Under either the pre-2004 or the post-2004 Regulation, the DOL and numerous federal

courts have found time and again that insurance representatives, like Plaintiff, who service their

company's insurance policies, meet the "directly related to" requirement for the administrative

exemption.  <u>See</u>, <u>e.g.</u>, <u>In re Farmers Ins. Exch.</u>, 466 F. 3d at 861 (<u>citing</u> <u>Alvarez v. IBP, Inc.</u>, 339

F.3d 894, 905 n.9 (9th Cir. 2003)); <u>see also</u> <u>Palacio</u>, 244 F. Supp. 2d at 1045; <u>Jastremski v.

Safeco Ins. Cos.</u>, 243 F. Supp. 2d at 751; <u>Cheatham</u>, 465 F.3d at 585-86; <u>Roe-Midgett v. CC

Services, Inc.</u>, No. 04 CV 4051 (DRH), 2006 WL 839443, at *14 (S.D. Ill. March 29, 2006);

Parlo Aff., Exs. F and G (finding that individuals such as Plaintiff meet the directly related to

requirement of the administrative exemption).[14]

---

[14] This conclusion of the DOL has the "force and effect of law."  <u>Batterton v. Francis</u>, 432 U.S.
416, 425 n.9 (1977) (citation omitted) (holding that regulations issued by an agency pursuant to
statutory authority "have the force and effect of law"); <u>United States v. Nixon</u>, 418 U.S. 683,
695-96 (1974) (same); <u>Udall v. Tallman</u>, 380 U.S. 1, 16 (1965) (holding that federal courts
should show "great deference to the interpretation given the statute by the officers or agency
charged with its administration"); <u>Webster</u>, 247 F.3d at 914 (citation omitted) (holding that "[w]e
must give deference to [the] DOL's regulations interpreting the FLSA").  "A reviewing court is
not free to set aside those regulations simply because it would have interpreted the statute in a

a.     Plaintiff Performed Administrative And Not Production Work In
Servicing The Company's Insurance Policies.

The DOL's pre-2004 Regulations expressly state that claims appraisers/adjusters perform

work directly related to the general business of the insurance companies for which they work.

See 29 C.F.R. § 541.205(c)(5) (2003) ("The test of 'directly related to management policies or

general business operations' is also met by many persons employed as … claim agents and

adjusters …" emphasis added); see also Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066,

1072 (7th Cir. 1997) (stating that "claims agents and adjusters . . . are specifically mentioned by

the regulations as meeting the 'directly related' test"); Edmund v. Crawford & Co., Inc., No.

Civ.A. 195-CV-1310JOF, 1997 WL 33330959, at **9-10 (N.D. Ga. Mar. 31, 1997) (citation

omitted) (noting that "[t]he regulations and the Wage-Hour Administrator have specifically

interpreted . . . 'insurance claims adjusters' as qualifying as an exempt administrative

employee").

Applying these Regulations, the DOL has uniformly taken the position for decades that

insurance employees, such as Plaintiff, fall within the administrative exemption because, inter

alia, they are employees "who perform work directly related to management policies or general

business operations." See Parlo Ex. G (citing 29 C.F.R. § 541.205(b) ("Wage and Hour has long

recognized that claims adjusters typically perform work that is administrative in nature")); see

also Parlo Ex. F (citing 29 C.F.R. § 541.205(c)(5) ("As you know, it is our current position that

claim agents and adjusters are employees who perform work directly related to management

---

different manner." Batterton, 432 U.S. at 425 (quoting Am. Tel. & Tel. Co. v. United States, 299
U.S. 232, 235-37 (1936)). Specifically, DOL Wage & Hour Division Opinion Letters are
entitled to deference by this Court. See Webster, 247 F.3d at 915 n. 2 (discussing DOL Opinion
Letters on exempt status and holding that "[w]e also give deference to DOL interpretations of its
own regulations") (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)).

policies or general business operations")).[15]  Indeed, again and again, the DOL has found that

insurance claims representatives "satisfy the standard for exemption as bona fide administrative

employees" because "their duties are administrative in nature." Id.

      The exemption of insurance claims representatives under the FLSA was most recently

upheld on the federal level by the United States Court of Appeals for the Ninth Circuit in In re

Farmers Ins. Exch., by the United States Court of Appeals for the Eighth Circuit in Cheatham v.

Allstate Ins. Co., by the United States District Court for the Southern District of Illinois in Roe-

Midgett v. CC Services, Inc., and by the United States District Court for the Southern District of

Ohio, in Murray v. Ohio Casualty Corp., in decisions squarely on point with the facts presented

by the instant case.  In all four cases, the courts held that the primary duties of the insurance

claims representatives, such as appraisers and adjusters, were directly related to the management

policies or general business operations of the company.  See In re Farmers Ins. Exch., 466 F.3d

---

[15]  See also Parlo Aff., Ex. I, October 29, 1985 Opinion Letter from United States Department of
Labor Deputy Administrator Herbert J. Cohen (finding that a "Field Service Representative," for
an insurance company was engaged in work "directly related to management policies or general
business operations of the employer or the employer's customers" and was, therefore, exempt);
Parlo Aff., Ex. J, June 21, 1995 Opinion Letter from United States Department of Labor Director
for Enforcement Policy, Atlanta Region, Lynn Pierce (stating that "[t]he administrative
exemption is limited to persons who perform work of substantial importance to the business of
their employer . . . Examples of such activity include 'adjusters' as you have pointed out"); Parlo
Aff., Ex. K, March 14, 1967 Opinion Letter from a United States Department of Labor
Administrator (holding that "[i]nsurance adjusters have generally been found to be within the
general coverage of the act"); Parlo Aff., Ex. L, May 1, 1963 Opinion Letter from United States
Department of Labor Deputy Regional Attorney Harry Campbell, Jr (stating that "[w]ith
reference to the exemption [under §541.2], it is clear that claims adjusters for insurance carriers
fall within the general classes of employees that may meet the requirement of the administrative
exemption"); Parlo Aff., Ex. M, February 18, 1963 Opinion Letter of United States Department
of Labor Regional Attorney Ernest M. Votow and Associate Solicitor Harold C. Nystrom
regarding the McDee Adjustment Company, Inc. (stating that "[o]ur position has been that the
work performed by claims adjusters is directly related to management policies or general
business operations (541.205(c)(5))");  Parlo Aff., Ex. N, October 24, 1957 Opinion Letter of
United States Department of Labor Regional Attorney John A. Hughes and Assistant Solicitor C.
Ira Funston regarding General Adjustment Bureau, Inc. (stating that "[a]s you know, it is our

at 859; <u>Cheatham</u>, 465 F.3d at 585-86; <u>Roe Midgett,</u> 2006 WL 839443, at *14; <u>Murray v. Ohio</u>

<u>Cas. Corp.</u>, No. 2:04-CR-539, 2005 WL 2373857, *5 (S.D. Ohio Sept. 27, 2005).

      The courts in each of the cases noted above based their findings on the fact that the

plaintiffs, like Plaintiff here, engaged in the types of activities contemplated by the Regulations

as "servicing" a business, such as representing the company and advising management,

evaluating damages, negotiating with claimants, insureds and body shops, and settling claims

and making settlement recommendations.  <u>See</u> <u>In re Farmers Ins. Exch.</u>, 466 F.3d at 863;

<u>Cheatham</u>, 465 F.3d at 585-86 ("For more than ***50 years***, the Department of Labor has

considered claims adjusters exempt from the Fair Labor Standards Act's overtime requirement"

(emphasis added)); <u>Roe Midgett</u>, 2006 WL 839443, at *14.  Thus, the plaintiffs met the "directly

related" test.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Marting v. Crawford & Co.</u>, No. 00 C 7132, 2006 WL 681060, **5-7

(N.D. Ill. March 14, 2006) (primary duties of claims representatives satisfied "directly related"

test); <u>Jastremski</u>, 243 F. Supp. 2d at 751-53 (same); <u>Palacio</u>, 244 F. Supp. 2d at 1047-48 (same);

<u>Haywood</u>, 121 F.3d at 1072 (holding that the plaintiff was an administrative employee where the

plaintiff's job duties included, <u>inter</u> <u>alia</u>, negotiating with clients and their attorneys and settling

billing, delay and cargo damage claims and where there was no evidence that the plaintiff was

involved in the "product" of moving goods); <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 9-10

(1st Cir. 1997) (holding that the plaintiffs were administrative and not production employees

where they were required to "represent the company" and promote sales – two examples of

exempt administrative work provided by § 541.205(b), and were in no way involved in the

design or generation of the Company's insurance policies); <u>Hogan v. Allstate Ins. Co.</u>, 210 F.

Supp. 2d 1312, 1321 (M.D. Fla. 2002) (granting summary judgment for Allstate Insurance and

---

current position that claim agents and adjusters are employees who perform work directly related
to management policies or general business operations" (<u>citing</u> 29 C.F.R. § 541.205(c)(5))).

holding that the insurance agents "in the instant cases are not involved in any way in the production of the insurance policies (the products) of Allstate"); <u>Edmund</u>, 1997 WL 33330959, at *9 (holding that claims adjusters who review files, document and investigate damages, make recommendations on settlement and negotiate settlements "clearly" satisfy "the applicable standards for exempt administrative responsibilities"); <u>Munizza v. State Farm Mut. Auto. Ins. Co.</u>, No. C94-5345RJB, 1995 U.S. Dist. LEXIS 22362, at *8 (W.D. Wash. May 12, 1995) (holding that "[i]nsurance claims agents and adjusters are used in 29 C.F.R. § 541.205 (c)(5) as examples of employees who are 'servicing' a business . . . Plaintiff's work as a Claims Specialist was 'directly related' to management policies or to general business operations because it was plaintiff's responsibility to execute or carry out the employer's policy"); <u>see also</u> <u>Spence v. Grange Mut. Cas. Ins. Co.</u>, No. 81AP-284, 1981 WL 3378, at *3 (Ohio Ct. App. July 30, 1981) (holding that "[t]here can be no argument" but that a claims adjuster who evaluated claims to determine if they were within the coverage of the policy, determined whether the company was liable for payment and determined what, if any amount should be paid in settlement of the claim, was performing work directly related to the business operations of his employer).

Plaintiff, like his fellow automobile claims appraisers/adjusters, was not involved in the design, production or sale of the Company's insurance policies. <u>See</u> Pl. Dep. 144-45. Therefore, Plaintiff was <u>not</u> involved in production activity. <u>See</u> 29 C.F.R. § 541.201(a) (2006); 29 C.F.R. § 541.205(b) (2003); <u>see also</u> <u>In re Farmers Insurance Exch.</u>, 466 F.3d at 863; <u>Cheatham</u>, 465 F.3d at 585-86; <u>Jastremski</u>, 243 F. Supp. 2d at 751-53; <u>Palacio</u>, 244 F. Supp. 2d at 1047. Rather, claims work is an ancillary service provided by the Company to its customers. <u>See</u> <u>Jastremski</u>, 243 F. Supp. 2d at 753 (rejecting the plaintiff's contention that Safeco Insurance "existed to produce settled claims," as the "vast majority of [Safeco's] insurance policies did not result in claims in any given year"); <u>Palacio</u>, 244 F. Supp. 2d at 1047 (noting that "[t]he vast majority of

18

Progressive's customers never make a claim against the policy they purchase and therefore never come into contact with any claims personnel," and holding that because claims work is not the business of an insurance company, Progressive's claims representatives do not produce the goods or services that the company offers to the public).

Specifically, Plaintiff admits that he: conducted a visual inspection, analyzed and determined the amount of damage to a vehicle (Pl. Dep. at 87); determined to what extent the damage pre-existed the accident (damage could be "a ding, a dent, a scratch, rust, anything that would take away from the value of the car") (Pl. Dep. at 88-90); negotiated labor rates and repair times with repair shops (Pl. Dep. at 70-73, 78); represented the Company in communications with customers, claimants and insureds (Pl. Dep. at 82, 85); determined whether to issue a check directly to a body shop or to an individual customer with check writing authority up to and including $20,000 (Pl. Dep. at 96, 155); identified and reported fraud (Pl. Dep. at 98); made recommendations regarding settlement amounts (Pl. Dep. at 80); and negotiated and settled claims. Pl. Dep. at 80; Gallagher Dep. at 65-67. Because Plaintiff, through the performance of these duties, was servicing the business, and did not produce any product, he was an administrative employee, not a production worker.

Thus, there is no question that Plaintiff's duties were administrative in nature.

        b.    <u>The Production/Administrative Dichotomy Is Inapplicable In This Case.</u>

As the DOL and the courts have now firmly recognized, whether an employee is performing production versus administrative work, the so-called administrative/production dichotomy has limited usefulness in today's workplace. Indeed, the current Regulations have expressly reduced the importance of the "production versus staff" dichotomy. <u>See</u> DOL Wage & Hour Div., Proposed Rules, Defining & Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 68 Fed. Reg. 15,560,

15,566 (Mar. 31, 2003) (stating that "[t]he proposed rule would also reduce the emphasis on the so-called 'production versus staff' dichotomy in distinguishing between exempt and non-exempt workers . . ."); see also Bothell, 299 F.3d at 1127 (holding that the administrative/production dichotomy is "but one analytical tool" and is not an "end in itself"); Webster, 247 F.3d at 916 (noting that "[t]he purpose of the dichotomy is to clarify the meaning of 'work directly related to the management policies or general business operations,' not to frustrate the purpose and spirit of the entire exemption"). In the Preamble to the current Regulations, the DOL further emphasized that it does not "believe that the dichotomy has ever been or should be a dispositive test for exemption." See 69 Fed. Reg. 22,140 (Apr. 23, 2004). "The final regulation is consistent with the Ninth Circuit's approach in *Phase Metrics*: the 'production versus staff dichotomy' is 'one analytical tool' that should be used 'toward answering the ultimate question,'. . .and ***is only determinative if the work 'falls squarely on the production side of the line*.'" 69 Fed. Reg. 22,122, 22,141 (Apr. 23, 2004) (emphasis added); see also Edwards, 2004 WL 3119911, at *5 (same); Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 517-18 (6th Cir. 2004). Consistent with this pronouncement, the Second Circuit has held that the administrative/production dichotomy is not controlling authority and should only be used "to the extent it assists [the court] in applying the statute and the legislative rules." Reich v. State of N.Y., 3 F.3d 581, 587 (2d Cir. 1993). Nevertheless, the administrative/production dichotomy only further demonstrates that Plaintiff is exempt.

The Company is in the business of designing and creating insurance policies and selling them to their customers. See Pl. Dep. at 144-45. As Plaintiff admits, insurance *policies* are, therefore, the product generated and marketed by the Company. See id. Plaintiff admits he had no role in the design, creation or sale of these policies. Pl. Dep. at 145. Moreover, it is the sale of insurance policies which produces the Company's revenue, not insurance *claims*, which

produce no revenue and are simply a cost of doing business. Palacio, 244 F. Supp. 2d at 1047

(holding that "Progressive is not in the business of claims handling. Rather, it is in the business

of writing and selling automobile insurance."); Reich v. John Alden Life Ins. Co., 126 F.3d at 9

(citation omitted) (holding that insurance policies are the very product "'that the enterprise exists

to produce and market'"); Scott Wetzel Servs., Inc. v. N.Y. State Bd. of Indus. Appeals, 682

N.Y.S.2d 304, 306 (N.Y. App. Div. 1998) (insurance adjusters are "not involved in producing

insurance policies, the commodity that an insurance company exists to produce"); Parlo Aff., Ex.

F ("the primary duty of [claims appraisers/adjusters] …is servicing the employer's customer's

business through the performance of claims adjusting duties").  Indeed, every insurance company

would be quite pleased (and very profitable) if there were few or no claims filed.  It is also

undisputed that claims appraisers/adjusters service the Company's business by, inter alia:

(1) serving as the Company's representative with claimants, policyholders, repair persons,

attorneys and others; (2) controlling financial exposure through their investigation, evaluation,

negotiation and settlement of claims; and (3) participating in liability determinations, setting

reserves, and advising their managers regarding certain claims.  These are all administrative

activities ancillary to MetLife Property and Casualty's principal activity – creating and selling

insurance policies.  See 29 C.F.R. § 541.205(b); Haywood, 121 F.3d at 1072 (holding that the

plaintiff was exempt under the administrative exception, where she negotiated with clients and

represented the company).

 Accordingly, it is clear that Plaintiff was not a production worker.  In re Farmers Ins.

Exch., 466 F.3d at 863 ("To place [automobile claims appraisers/adjusters] on the production

side] there would elevate form – corporate form, to be precise – over substance.").

   c. Plaintiff's Work Was Of Substantial Importance To The
    Company's Operations.

 It is also clear that Plaintiff performed work of "substantial importance to the

management or operation of the business."  29 C.F.R. § 541.205(a) (2004).  First, the

Regulations specifically state that claims agents and adjusters are included among the positions

that generally meet the directly related test (which includes the "substantial importance"

requirement).  See 29 C.F.R. § 541.205(c) (2004); Jastremski, 243 F. Supp. 2d at 754 (finding

that the plaintiff claims adjuster satisfied the "substantial importance" requirement "[b]ased on

the plain language of the regulations").  Second, factually, Plaintiff admitted that he possessed

authority to pay settlments up to $20,000, and further admitted, that his work could affect the

Company's profitability.  Pl. Dep. at 96; Parlo Aff., Ex. E.  For claims involving amounts more

than his $20,000 authority, Plaintiff made recommendations concerning settlement and

negotiated and settled the claims. Pl. Dep. at 96, 155.  In fact, Plaintiff testified that he approved

claims in amounts as high as $35,000 (with supervisory approval).  Pl. Dep. at 155.  Plaintiff's

recommendations were almost always accepted.  Id. at 110-11.  Third, Plaintiff admitted and

wrote in his Self-Assessment Form that he could affect "[the Company's] bottom line."  Pl. Dep.

at 96; Parlo Ex. E.

    The DOL has expressly recognized that an insurance claims employee's determination of

the amount of damages "can result in extremely large financial consequences for the firm."  See

Parlo Aff., Ex. G, (citing Palacio, 244 F. Supp. 2d 1040).  Accordingly, courts have consistently

found that claims representatives with levels of responsibility commensurate with that of

Plaintiff, clearly satisfied the "substantial importance" requirement, and are administrative, and

not production, employees.  Murray v. Ohio Casualty Corp., 2005 WL 2373857, at *7 (holding

that the plaintiff's work was of substantial importance to the management or operation of the

defendant's business where the plaintiff adjusted 60 automobile claims per month and hundreds

of thousands of dollars in claims per year); Jastremski, 243 F. Supp. 2d at 754-55 (same); Blue v.

The Chubb Group, No. 03 C 6692, 2005 WL 1667794, **11-12 (N.D. Ill. July 13, 2005) (same);

Munizza v. State Farm Mut. Auto. Ins. Co., No. C94-5345RJB, 1995 U.S. Dist. LEXIS 22362, at

**13-14 (W.D. Wash. May 12, 1995) (same); see also Haywood, 121 F.3d at 1072 (holding the

plaintiff satisfied the "substantial importance" requirement because her duties of ensuring a

"happy move of the clients' household goods" and avoiding increased litigation costs and a

decreased customer base, were "important to the success of the firm"); Reich v. John Alden Life

Ins. Co., 126 F.3d at 10 (finding that claims agents and adjusters as examples who negotiated and

settled claims with clients performed duties that were of "substantial importance").  Specifically,

automobile claims appraisers/adjusters handle hundreds of thousands of dollars (if not millions

of dollars) in claims annually and, these claims, viewed in the aggregate, have a substantial

impact on business.  Id.; see also Jastremski, 243 F. Supp. at 753-55.  Moreover, automobile

claims appraisers/adjusters can subject their employer to legal actions and contractual damages

through improper coverage determinations.  In re Farmers Ins. Exch., 466 F.3d at 863 ("What

matters is that [the Company] bears the financial consequences of its adjusters' coverage

determinations.").

        Like the adjusters in In re Farmers Ins. Exch., Cheatham, Murray, Blue, Jastremski,

Palacio, Munizza, and John Alden, Plaintiff played an important role in ensuring customer

satisfaction, resolving claims and controlling the Company's financial exposure.  The financial

stakes involved are significant.  If settlements on meritorious claims are paid in amounts in

excess of what reasonably should be paid, or if other fraudulent practices or claims are not

uncovered and denied, it can significantly impact the Company's finances.  Conversely, if claims

are arbitrarily denied, or if settlements are not fair, there can be a significantly increased amount

and cost of litigation, a loss of customers and potential disqualification under state insurance

regulations.  Plaintiff's work, therefore, substantially impacted the Company's business

operations and, accordingly, his work was "substantially important" to the Company.

Accordingly, Plaintiff clearly met the second prong of the administrative exemption.

**B.    Plaintiff's Duties Required The Daily Use Of Discretion And Independent Judgment.**

To satisfy the third and final prong of the administrative exemption, an employee's duties must include the exercise of discretion and independent judgment.  29 C.F.R. § 541.200(a)(3), 202 (2006); 29 C.F.R. §§ 541.2(a)(1), 541.2(e)(2) (2003).

> In general, the exercise of discretion and independent judgment, involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered.

29 C.F.R. § 541.202(a); 29 C.F.R. § 541.207(a) (2003).  Under this standard, Plaintiff's duties and responsibilities clearly included the exercise of discretion and independent judgment.

In fact, the DOL Regulations specifically provide that the following duties, when performed by insurance claims employees, all involve discretion: inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage claims; determining liability and total value of a claim; and negotiating settlements. 29 C.F.R. § 541.203.  The DOL has also confirmed in several opinion letters that employees who perform these duties are generally exempt because their duties require the exercise of discretion and independent judgment.  See, e.g., Parlo Aff., Exs. F and G.[16] Plaintiff performed all of these duties.  Moreover, even if he did not, the Regulations clearly do not require "the adjuster to perform each and every activity listed."  In re Farmers Ins. Exch., 466

---

[16] See also Parlo Aff., Ex. I (DOL opinion letter finding that an insurance "Field Service Representative," exercised discretion and independent judgment where he "investigates the claims, determines the extent of the damages, negotiates the settlements within the parameters of the established monetary limits, and makes recommendations with respect to larger case settlements"); Parlo Aff., Ex. M (DOL opinion letter reviewing the duties of adjusters and holding that "[t]hus where the adjuster investigates the validity and extent of liability of a claim and negotiates settlement, it would seem that he is exercising discretion and independent judgment as contemplated under Section 54.2 . . . ."); Parlo Aff., Ex. N (DOL opinion letter stating that if "adjusters are given reasonable latitude in carrying on negotiations with the

F.3d at 861; 29 C.F.R. § 541.203(a) (noting that claims adjusters are administratively exempt if

their duties "<u>include</u>" certain enumerated activities).

Applying these DOL Regulations, and the DOL Opinion Letters, numerous courts have

held that insurance appraisers and adjusters who assess the damage to an automobile or other

property, and who negotiate and settle insurance claims, are clearly covered by the

administrative exemption.  <u>See</u>, <u>e.g.</u>, <u>In re Farmers Ins. Exch.</u>, 466 F.3d at 861-64 (reversing

lower court with respect to automobile damage and property adjusters and holding that these

employees were exempt because they exercised discretion and independent judgment in, <u>inter</u>

<u>alia</u>, negotiating settlements; advising regarding perceived fraud; and negotiating on behalf of the

company); <u>Cheatham</u>, 465 F.3d at 584-86 (affirming grant of summary judgment to employer

where claims adjusters were exempt because they exercised the requisite discretion and

independent judgment); <u>Jastremski</u>, 243 F. Supp. 2d at 755-58 (granting summary judgment and

holding that plaintiff exercised sufficient discretion and independent judgment where his duties

and responsibilities included: negotiating claim settlements; the authority to settle any claim

within his authority; and making recommendations to management on claims above his authority

which were usually accepted); <u>Palacio</u>, 244 F. Supp. 2d at 1048 (granting summary judgment

and holding that plaintiff exercised sufficient discretion and independent judgment where her

duties included; negotiating with claimants; settling claims within her authority; and making

recommendations to management on claims above her authority)[17]; <u>Blinston v. Hartford</u>

---

insured, the results of which form the basis of their recommendations, they may be exercising the
kind of discretion and judgment to qualify for the exemption").

[17]  The court in <u>Palacio</u> placed heavy emphasis on the negotiation aspect of the plaintiff's job,
noting that "[n]egotiations demand more than the bare application of learned skills in
conformance with prescribed procedures."  244 F. Supp. 2d at 1048.  Indeed, the court held that
the "act of negotiating itself involved the exercise of discretion and judgment."  <u>Id.</u>  Although not
the basis of the court's holding, the court noted that the plaintiff's exercise of discretion and
independent judgment even satisfied the "long test," <u>i.e.</u>, the plaintiff "customarily and regularly"

Accident & Indem. Co., 441 F.2d 1365, 1366 (8th Cir. 1971) (affirming dismissal of plaintiff's complaint and holding claims adjuster exempt under the administrative exception where he performed his duties with little supervision, had "uncontrolled settlement authority of $3,000 per case" and settled the bulk of cases within this authority); Spence v. Grange, 1981 WL 3378, at *4 (holding claims adjuster performed work requiring the exercise of discretion and independent judgment where a major portion of the plaintiff's duty was to "settle property damage claims where he had the discretion to make a final and binding settlement …." within the employee's monetary limit of at least $2,500); Haywood, 121 F.3d at 1073 (affirming summary judgment for the employer and holding that plaintiff's job duties, which included negotiating and settling claims, were "indicative of the exercise of discretion and independent judgment").[18]

In Roe-Midgett, a case directly on point, the court held that automobile damage appraisers exercised sufficient independent judgment and discretion to qualify for the administrative exemption where they investigated, documented and evaluated vehicle damage, made decisions regarding total losses, repairing or replacing parts and repair time, negotiated with claimants, insureds and body shops, and settled cases. Roe-Midgett, 2006 WL 839443 at *15. Relying on the fact that the appraisers made independent choices and performed most of their duties in the field and free of supervision, the court held that the plaintiffs exercised

---

exercised discretion and independent judgment. Palacio, 244 F. Supp. 2d at 1047. Plaintiff here admitted that he negotiated claims. Compl. ¶ 14; Pl. Dep. at 76-79, 70-73.

[18] In opposition, Plaintiff may attempt to rely on the Court's decision in Reich v. American Int'l Adjustment Co., 902 F. Supp. 321 (D. Conn. 1994). The decision in Reich pre-dates: (1) the DOL's Regulations in 2004 provide a list of duties emphasizing appraiser/adjusters duties are exempt duties (see 29 C.F.R. § 541.203); (2) the 2002 and 2005 Opinion Letters (Parlo Aff., Ex. F and G) which found appraisers/adjusters exempt; and (3) the now substantial body of caselaw, addressed supra (see, e.g., In re Farmers Ins. Exch., 466 F.3d at 861-64; Cheatham, 465 F.3d at 584-86; Jastremski, 243 F. Supp. 2d at 755-58; Palacio, 244 F. Supp. 2d at 1048) in which courts have found that insurance claims employees are exempt administrative employees.

sufficient independent judgment and discretion <u>despite</u> the fact that they did not all perform all of the duties listed by the DOL in its list of possible duties for adjusters.  <u>Id.</u> at **4-7.[19]

It is undisputed that Plaintiff here exercised even <u>more</u> discretion and independent judgment than the exempt employees in both <u>In re Farmers Ins. Exch.</u> and <u>Roe-Midgett</u>.  Plaintiff admits that his duties, in areas consistently found to involve discretion by the DOL and many federal courts, included:

- ***Plaintiff inspected and appraised damage to automobiles, including but not limited to, the extent and validity of the damage and determined what parts could be replaced or repaired, the value of a claim, and whether a vehicle was a total loss***.  Pl. Dep. at 56, 68-69, 85, 89-92, 99; Compl. ¶ 14; Gallagher Dep. at 80-81; 29 C.F.R. § 541.203(a) (2004); <u>Blinston</u>, 441 F.2d at 1366; <u>Marting</u>, 2006 WL 681060, **12-14; <u>In re Farmers Ins. Exch.</u>, 466 F.3d at 861-63; <u>Cheatham</u>, 465 F.3d at 585-86; <u>Roe-Midgett</u>, 2006 WL 839443, at *15.

- ***Plaintiff estimated the cost of repairs***.  Pl. Dep. at 68; <u>see also</u> 29 C.F.R. § 541.203(a); <u>Marting</u>, 2006 WL 681060, at **12-14; <u>In re Farmers Ins. Exch.</u>, 466 F.3d at 861-63; <u>Cheatham</u>, 465 F.3d at 586; <u>Roe-Midgett</u>, 2006 WL 839443, **4-7; Parlo Aff., Ex. G, (finding exempt duty of "making a decision on whether and how much to pay on the claim").

- ***Plaintiff negotiated and settled insurance claims***.  Pl. Dep. at 70-73, 76-81 (Plaintiff had discretion to settle claims and "had to come to an agreement" with a body shop concerning his estimate and what needed to be repaired); Pl. Dep. at 276-77 (Plaintiff negotiated and made concessions with insureds); Pl. Dep. at 253 (Plaintiff was not limited in the amount of the concessions he could make);  Pl. Dep. at 265-66 (Plaintiff reduced a damage estimate as a concession for an insured by approximately 20% without consultation or approval from anyone); <u>see also</u> Gallagher Dep. at 65-67 (appraisers "have a lot of discretionary ability" in negotiations with body shops); Compl. ¶ 14 ("if necessary, negotiate with repair shops to arrive at an agreed upon price to perform repair work"); 29 C.F.R. § 541.203(a) ("Insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . if their duties include . . .negotiating settlements"); <u>Cheatham</u>, 465 F.3d at 586 (same); <u>Spence</u>, 1981 WL 3378, at *4 (same);

---

[19]  The fact that the appraisers had to follow certain guidelines, utilize computer software, and obtain their supervisors' approval occasionally did not alter the conclusion that their primary duty included the exercise of independent judgment and discretion.  <u>Roe-Midgett</u>, 2006 WL 839443, **15-16 (an automobile claims appraiser/adjuster "must use good judgment" in estimating claims and "the use of computer software to estimate claims <u>does not</u> eliminate the need for discretion and judgment any more than does resort to other reference works or to the opinions of appraisers and other experts"); <u>see also</u> <u>In re Farmers Ins. Exch.</u>, 466 F.3d at 863 (same); <u>Cheatham</u>, 465 F.3d at 585-86 (same).

Marting, 2006 WL 681060, **12-14 (same); In re Farmers Ins. Exch., 466 F.3d at 861-63 (same); Parlo Aff., Ex. G, (listing as an exempt duty "negotiat[ing] on behalf of the company with the claimant, whether the claimant is a policyholder or a third party claimant").

- ***Plaintiff had the authority to write checks in amounts up to $20,000 without the need to obtain approval from his supervisor***. Pl. Dep. at 96, 155; see also 29 C.F.R. § 541.202(b) and (c); Blinston, 441 F.2d at 1366; Spence, 1981 WL 3378, at *4; Marting, 2006 WL 681060, **12-14; Jastremski, 243 F. Supp. 2d at 755-58; In re Farmers Ins. Exch., 466 F.3d at 861-63; Parlo Aff., Ex. G, (Although "[s]ome of the adjusters have quite limited levels of authority, as low as $3,000 … even those adjusters make recommendations to their supervisors on the appropriate value of much larger claims, which are frequently accepted."); Id. (Claims adjusters "have complete discretion and independent judgment with regard to all claims within their established authority").

- ***Plaintiff communicated with customers on behalf of the Company.*** Pl. Dep. at 67, 82 (Plaintiff admits that his "ability to communicate with the customers" is what made him good at this job and that his "good" customer service skills were exemplified by "minimal [customer] complaints"); Pl. Dep. at 173 (Plaintiff admits that customer service was important to the Company and, in fact, the Company had an outside service monitor and ensure the proper level of customer service); Pl. Dep. at 242 (Plaintiff felt accountable to make sure his interactions with claimants were satisfying to those customers); Pl. Dep. at 257-58 (Plaintiff interacted not only with claimants and body shops but also with insureds' attorneys); 29 C.F.R. § 541.202(b); Roe-Midgett, 2006 WL 839443, at *14; Haywood, 121 F.3d at 1073.

- ***Plaintiff performed his job duties out in the field with minimal direct supervision.*** Pl. Dep. at 222-23, 243 (Plaintiff worked "independently", including, setting his own schedule and appointments and making decisions whether parts were repairable or replaceable); Pl. Dep. at 107-08 (Plaintiff was accompanied by a supervisor in a "ride-along" every couple of months but, otherwise, Plaintiff was alone in his work and dealings); Pl. Dep. at 141 (Plaintiff admits that he did not generally go into the Field Claims Office more than one time per month); 29 C.F.R. § 541.202(b) (2006); see also Roe-Midgett, 2006 WL 839443, at *15.

Any one of these duties, standing alone, is evidence of Plaintiff's exercise of discretion. Thus, there can be no question that Plaintiff's duties and responsibilities taken together – including but not limited to his ability to negotiate, settle claims and pay settlements on behalf of the Company (without the need for any further approval) for up to $20,000 – clearly involved the exercise of discretion and independent judgment.

Plaintiff also testified to numerous specific examples of how he exercised discretion and independent judgment in the performance of his job duties. First, Plaintiff admitted in his

Complaint that he "negotiate[d] with repair shops to arrive at an agreed upon price to perform the repair work" or, as he testified at his deposition, he was "coming to an agreed figure with" the body shop. Pl. Dep. at 77. In other words, where Plaintiff prepared an estimate that differed in amount from the body shop's estimate, he could, on his own, agree to a third amount between his estimate and the body shop's estimate. Pl. Dep. at 70. Plaintiff's own notes refer to the fact that he "negotiate[d]" with claimants. Pl. Dep. at 277.

Plaintiff also testified he would make "concessions" (i.e., negotiations) in dealing with body shops over repair costs and time. See Pl. Dep. at 72-73; Gallagher Dep. at 74-77. Plaintiff would make such concessions as to the "labor rates, paint, material and occasionally labor times" where the body shop requested more than what Plaintiff deemed appropriate. Plaintiff had the discretion to elect whether to make a concession in any particular case. For example, if the body shop stated a car needed six hours of work and Plaintiff believed it would take only four to repair the vehicle, he could and did make a concession for five hours. Pl. Dep. at 71-72. Plaintiff might also consider a concession in a case where, for example, the "body shop [was] historically difficult to get along with." Id. It was Plaintiff's decision whether the body shop was sufficiently "difficult" to justify a negotiation concession and, if so, in what amount he would make the concession. Id.

Plaintiff also, as he recorded in his appraisal reports, "negotiate[d]" with claimants. Pl. Dep. at 277; see also Pl. Dep. Ex. 12 (Plaintiff's 12/12/04 appraisal report attached to Parlo Aff., as Ex. O). Specifically, Plaintiff testified that he negotiated over such things as "actual cash value" of items, "stereos" and claimants' entitlement to fees imposed by dealerships and third parties. Id. Plaintiff also had to analyze and determine on a case-by-case basis whether to provide an appearance allowance (i.e., providing the claimant with the option of a dollar amount to keep a damaged but workable part rather than replacing the part) or an allowance for

betterment (i.e., the amount a part is valued after its everyday "wear and tear").  Id.  Plaintiff would determine these amounts based upon the amount of the damage, the value of the part and his knowledge and experience.  Id.  On one occasion, Plaintiff testified that he appraised damage at a particular dollar amount and, without consulting anyone, reduced the dollar amount by approximately 20% as a concession for a claimant when preparing the estimate.  Pl. Dep. at 265-66.

Plaintiff also used his discretion and independent judgment in his evaluation of damage claims and in the detection of potential fraud.  See Pl. Dep. at  98-100.  Plaintiff testified, for example, that if a claimant reported damage from an accident with a deer but, after Plaintiff's investigation, analysis and review, Plaintiff noted "no visible damage of deer hair" – it would be up to Plaintiff to determine whether the accident could have occurred as alleged by the claimant or whether the claimant was lying.  Pl. Dep. at 99-100; Roe-Midgett, 2006 WL 839443, at *5 (finding that an automobile claims appraiser/adjuster exercised discretion in determining on a case-by-case base whether particular damage looks like a 'deer hit').  Therefore, Plaintiff used his independent judgment and discretion not only in analyzing the extent, type and cost of damage to a vehicle but, further, to assess the validity of the claim and the causal connection between the story told and the damage reflected.  Id.

Plaintiff also determined whether any of the damage he analyzed was related to the accident in question, or was "old damage" (i.e. damage which preexisted the accident).  Pl. Dep. at 88-90.  This, too, was a judgment call Plaintiff made.  In one instance, Plaintiff determined that certain damage was not related to the claimed accident.  Pl. Dep. at 271-73.  Indeed, he returned to the vehicle specifically for the purpose of reinspecting to confirm whether the door's damage was related to the accident, and determined that his initial assessment that the damage was unrelated was correct.  Id.

Plaintiff also admitted that he would make, in his words, a "judgment call" as to whether to have a damaged part repaired or replaced. Pl. Dep. at 179-80. Additionally, if Plaintiff made a decision to have a part repaired, he would determine the repair time for that damage. <u>See</u> Gallagher Dep. at 71-72; <u>see also</u> Pl. Dep. at 68, 79, 261-62. Repair time is determined solely by the automobile claims appraiser/adjuster – the Company's computer systems do not even suggest an appropriate repair time. Pl. Dep. at 261-62. Indeed, Plaintiff testified that for automobile claims appraisers/adjusters, like him, "[e]very case is a different scenario." <u>See</u> Pl. Dep. at 68-69, 99; Compl. ¶ 14. Thus, Plaintiff had to evaluate the damage in each case and determine whether to have the damage fixed by repairing or replacing damaged parts and, where appropriate, for what repair time the Company would pay on the claim.

Plaintiff also analyzed the damage in question and determined whether a vehicle constituted a total loss (<u>i.e.</u>, the cost of repair exceeds the value of the car). <u>See</u> Pl. Dep. 85-86; Gallagher Dep. at 80-81. A total loss claim requires the preparation of essentially "two estimates" – "you take two cars side by side. One is the insured's car, do it one minute before the accident with preexisting old damage. One is the exact same car side by side in dealer-ready condition." Pl. Dep. 90-91. Some losses, where "there is nothing left to it [the vehicle]," are, according to Plaintiff, "obvious" total losses. Pl. Dep. 158. In other cases, Plaintiff had to assess whether the car had damage that preexisted the accident, the scope and value of that damage, and then make a determination, given the repairs that would have to be made to the vehicle, as to whether it constituted a total loss. Pl. Dep. at 85-86, 274-75. Even what Plaintiff determined to be "obvious" total losses, however, were not always "obvious" to other experienced appraisers. Pl. Dep. at 248-50. In one instance, for example, Plaintiff inspected a vehicle that was, in his opinion, so damaged that it was an "obvious total loss" and beyond repair. <u>Id.</u> at 248-50, 275-76. In Plaintiff's judgment, in fact, the total loss was so "obvious" that he did not even complete an

estimate on the vehicle. Id.  Plaintiff's supervisor, however, disagreed with him and authorized the vehicle's repair.  Pl. Dep. at 275-76.

By definition, discretion and independent judgment involves "making a decision" after evaluat[ing the] possible courses of conduct."  29 C.F.R. § 541.202(a).  Thus, a hallmark of independent judgment and discretion is that two experienced automobile claims appraisers/adjusters, each applying the allegedly same policies, could evaluate the possible courses of action and reach *different* decisions as to how to handle the same claim.  Id.  Plaintiff admits that on occasion, his supervisor disagreed with his determination that a vehicle was a total loss and, instead, believed the car could be repaired.  Id. at 275-76.  Plaintiff further admits that, at the Company, two automobile claims appraisers/adjusters looking at the *same vehicle* could come to *two different conclusions* about the age, level and cost of the damage in question, and, therefore, their estimates may clearly be different.  Pl. Dep. at 89, 91-92.  The quintessential example of discretion and independent judgment occurred during an exercise sponsored by the Rocky Hill Field Claims Office, with which Plaintiff was affiliated.  Specifically, the Company brought in a damaged vehicle and asked Plaintiff and approximately eleven other experienced automobile claims appraisers/adjusters "to go out and write new damages, old damages, come up with a figure on what [they] thought would be need[ed] to repair that vehicle on an individual basis" – in other words, to prepare an estimate on the vehicle.  Pl. Dep. at 91.  Plaintiff admits that the eleven automobile claims appraisers/adjusters did not come close to agreeing upon an estimate for the damaged vehicle.  Id.  In fact, "[t]he estimates varied between $1,200 and $12,000."  Id.  This is a 1000% difference among seasoned adjusters.  Given that the automobile claims appraisers/adjusters were all, by Plaintiff's admission, experienced appraisers/adjusters at the time of the exercise, the significant discrepancy between their estimates could not have been the result of skill or experience but, rather, evidences quite clearly the discretion and independent

32

judgment an appraiser/adjuster uses to prepare an estimate.  <u>See</u> Pl. Dep. at 91-92.

              Plaintiff also exercised discretion and independent judgment when he testified on behalf of the Company in court on several occasions.  <u>See</u> Pl. Dep. at 174.  In fact, Plaintiff testified in court on one occasion in place of his supervisor.  <u>Id.</u> at 174, 245-46.  This kind of special assignment, in addition to the previous examples, provides further evidence of Plaintiff's exercise of independent judgment and discretion.

              Finally, the discretion and independent judgment exercised by Plaintiff in carrying out his duties and responsibilities is evident in the fact that, for the most part, he functioned out of his home and car and, therefore, alone.  Plaintiff set his own schedule, and worked independently attending to his appointments.  <u>Id.</u> at 222-23, 243.  Typically, Plaintiff handled every claim from beginning to end.  <u>See</u> Pl. Dep. at 79-80.  Indeed, on the majority of his claims Plaintiff was the sole point of contact with the customers, and Plaintiff negotiated claim settlements completely on his own.  <u>See</u> Id. at 67, 82, 85.  Consistent with the spirit of the Regulations, at each step of the claims process it was Plaintiff who, without immediate direction or supervision, had the authority to evaluate possible courses of conduct, and make decisions after the various possibilities were considered.

              In short, Plaintiff's use of discretion and independent judgment was paramount to the completion of his daily duties, which are precisely the same duties that the DOL and the courts have regularly and uniformly found to be administratively exempt duties.  Because Plaintiff exercised discretion and independent judgment in the performance of his administrative duties, he clearly met the third prong of the administrative exemption and was properly classified as an exempt employee.

## **<u>CONCLUSION</u>**

              Based on the foregoing, and the accompanying Statement of Material Undisputed Facts

and supporting Affidavits, Defendant respectfully submits that, as a matter of law, Plaintiff

satisfies all of the requirements of the administrative exemption under the FLSA and its parallel

Connecticut statute.  Plaintiff, therefore, is not entitled to overtime pay, or to any other damages

prayed for in his Complaint.  This result is compelled by the applicable Regulations, precedent in

similar cases, the opinions of the Department of Labor, and the undisputed facts in this case.

Accordingly, Defendant is entitled to summary judgment in its favor, and all of Plaintiff's claims

should be dismissed in their entirety.


Dated: February 5, 2007                         Respectfully submitted,

                                                DAY PITNEY LLP


                                                By:  ____/s/ Victoria Woodin Chavey_____
                                                    Victoria Woodin Chavey (CT14242)
                                                    Stacy Smith Walsh (CT25252)
                                                    City Place I
                                                    Hartford, Connecticut 06103
                                                    (860) 275-0467
                                                    (860) 275-0343 (facsimile)
                                                    vwchavey@daypitney.com
                                                    sswalsh@daypitney.com

                                                    Morgan, Lewis & Bockius LLP
                                                    Christopher A. Parlo (CT 04700)
                                                    Carrie A. Gonell (CT 24336)
                                                    101 Park Avenue
                                                    New York, New York  10178
                                                    (212) 309-6062
                                                    (212) 309-6001 (facsimile)
                                                    cparlo@morganlewis.com

                                                    Attorneys For Defendant Metropolitan Property and
                                                    Casualty Insurance Company

**TABLE OF CONTENTS**

**Page**

**CERTIFICATE OF SERVICE**

I hereby certify that on **February 5, 2007**, a copy of the foregoing Defendant's Memorandum in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By /s/ Victoria Woodin Chavey
Victoria Woodin Chavey (ct14242)
Day Pitney LLP
CityPlace I
Hartford, CT  06103-3499
(860) 275-0100
Fax:  (860) 275-0343
vwchavey@daypitney.com