UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

James Neary, individually and      :
on behalf of other similarly       :
situated individuals,              :
    Plaintiffs,                  :
                               :    Case No. 3:06cv536 (JBA)
v.                                 :
                               :
Metropolitan Property and          :
Casualty Insurance Company,        :
    Defendant.                   :

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. # 88] AND PLAINTIFF'S MOTION TO PROCEED AS A COLLECTIVE ACTION AND FOR RELATED RELIEF [DOC. # 33/35]**

    Plaintiff James Neary instituted this action on behalf of himself and other similarly situated individuals, "i.e., Field Adjusters, Field Appraisers, and/or Outside Adjusters," against his employer, Metropolitan Property and Casualty Insurance Company ("Metropolitan"), alleging failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and asserting, inter alia, an individual claim and a collective action claim under the FLSA.

    Neary was employed by Metropolitan in Rocky Hill, Connecticut, during the relevant period of April 6, 2003 to January 23, 2006.  Neary claims that he "frequently" worked more than forty hours per week and that Metropolitan failed to pay him for overtime in violation of the FLSA.  (3d Am. Compl. [Doc. # 54] ¶¶ 16-17.)  Metropolitan contends that Neary was exempt under the FLSA as an administrative employee and is therefore not

1

entitled to overtime pay.

Neary moved to proceed as a collective action under the FLSA and for related relief, adjudication of which was stayed pending determination of defendant's motion for summary judgment, in which Metropolitan contends that Neary is exempt from overtime pay as a matter of law. For the reasons that follow, defendant's motion is denied, and plaintiff's motion is granted.

## I.    **Factual Background**

Neary was employed by Metropolitan as either an automobile damage appraiser or adjuster during the relevant period of April 6, 2003 to January 23, 2006. (3d Am. Compl. ¶ 13.) His duties included inspecting damaged automobiles visually, writing estimates, and reaching agreements with auto body shops regarding repair costs. (Id. ¶ 12.) But beyond these basic descriptions, there is significant disagreement as to what Neary's specific duties entailed and other tasks he may or may not have performed.

Metropolitan is an insurance company that sells insurance policies and pays claims made on those policies. (Pl. 56(a)(2) Statement [Doc. # 95-2] ¶ 4.) The defendant describes its business as "designing and creating insurance policies." (Def. 56(a)1 Statement [Doc. # 90] ¶ 3.) Neary argues that Metropolitan's business is not limited to these activities, and that Metropolitan is also in the business of "receiving, investigating, and handling claims." (Scarpace Dep. at 13-16.)

2

The parties agree on some aspects of Neary's work.  He would typically receive the initial information about a claim from either "direct dispatch" (which did not allow him to schedule his own appointments) or by another means that allowed him to make his own schedule.  (Pl. Dep. at 222-23; Scarpace Dep. at 83-84.) If necessary, Neary then contacted the claimant and made an appointment to view the damage.  (Pl. Dep. at 87.)  After inspecting and photographing the vehicle, Neary wrote an estimate of the cost of repairing the vehicle. (Pl. Dep. at 88-91; Scarpace Dep. at 84; Pl. 56(a)(2) Statement ¶ 20.)

One of Neary's primary duties was negotiating the repair costs with auto body shops.  (Pl. 56(a)(2) Statement ¶ 14.) Neary testified that he would show the shop his estimate, which differed from the shop's estimate some "80, 85 percent" of the time.  (Pl. Dep. at 69.)  If the estimates were different, he would possibly make a concession, meaning that "the company [wa]s agreeing to the body shop's additional charges" for "labor rates, painting materials, and occasionally labor time."  (Id. at 70-71).  Neary would then reach an "agreed-upon" price with the auto body shop, and he would pay either the claimant or the shop. (Pl. Dep. at 77-78.)

At this point, the parties' views diverge.  Neary asserts that the estimate was essentially prepared by computer software on his laptop, and that he simply entered data into the fields as

prompted.  (Pl. Dep. at 179-180.)  He testified at his deposition
that he entered "the VIN, options, condition, any old damage,
[and] mileage" into the computer program, which would then
compute "the approximate value on that vehicle."  (Pl. Dep. at
86.)  He also testified that he entered the amount of time that
he believed the repair would take and then the "computer system
would calculate" whether a particular part was to be repaired or
replaced.  (Pl. Dep. at 250.)  It is undisputed that the computer
program determined whether it was cheaper to replace or repair a
part if he chose to hit the "compare" button on his computer.
(Pl. 56(a)(2) Statement ¶ 23.)  However, Plaintiff also testified
that whether he decided to hit the "compare" button in the first
place was "a judgment call."  (Pl. Dep. at 179-180.)  The
defendant cites this testimony and that of Mr. Scarpace to argue
that Plaintiff used his own judgment to complete estimates.
(Scarpace Dep. at 139-140.)

     Neary also contends that he did not participate in the
decision whether to pay a claim.  He received the claims with the
pay codes, which indicated whether the claim was to be paid,
already entered. (Gallagher Dep. at 85, Pl. Dep. at 84.)
Metropolitan emphasizes that there was one way in which Neary
could influence whether the claim was to be paid: if he
determined that the claimant might be lying about the cause of
the damage, he would refer the claim to the fraud investigation

department.  (Pl. Dep. at 98-100.)

The parties disagree whether Neary negotiated with insureds. (Pl. 56(a)(2) Statement ¶ 39.)  Neary testified that he made a concession on at least one occasion by giving an allowance in the settlement check to a claimant for a car stereo, which the defendant characterizes as negotiation.  (Pl. Dep. at 277; Def. 56(a)1 Statement ¶ 39.)  Such concessions, according to Neary's testimony, were infrequent and generally required supervisor approval: he testified that there "wasn't really [any] negotiation."  (Pl. Dep. at 76, 253.)  Neary also routinely deducted money from and granted allowances to claimants' settlement checks for "betterment" and "appearance."  (Pl. 56(a)(2) Statement ¶ 42.)  According to Neary, this involved calculating an appropriate deduction or payment based on the "wear and tear" of, or superficial damage to, a vehicle part. (Pl. Dep. at 254, 257.)  Metropolitan points to this as showing that Neary negotiated with claimants.

Further, the parties dispute whether Neary had discretion in assessing whether a vehicle was a "total loss."  (Pl. 56(a)(2) Statement ¶ 24, 48.)  The plaintiff admits that he would determine whether a vehicle was an "obvious total loss," such as a "burned out shell" (Pl. Dep. at 249), but that otherwise the ultimate determination whether the vehicle was a total loss was made using the company-issued computer system and then referred

5

to a total loss specialist. (Scarpace Dep. at 157-158.)
Specifically, Neary testified that after entering the nature of
the vehicle damage, the software would classify it as a total
loss if the damage exceeded 80% of the total value of the
vehicle. (Pl. Dep. at 86.) However, Metropolitan's description
of the auto appraiser position provides that such employees are
responsible for "identifying total loss and coordinating the
claim with Total Loss Specialist." (Pl. Mem. in Opp., Ex. B.)
This would conflict with Neary's assertion that the total loss
determination was essentially made by the computer software that
he used, unless the identification was the utilization of the
software. (Pl. Dep. at 85-86, 246-247.) His supervisor
testified that Neary did not handle total loss claims beyond
entering his estimate into the company system. (Scarpace Dep. at
200.)

The parties also disagree whether the plaintiff dealt with
legal counsel. (Pl. 56(a)(2) Statement ¶ 41.) Neary testified
that he "very rarely" interacted with claimants' attorneys, and
that such dealings were substantially the same as with the
claimants themselves. (Pl. Dep. at 258.) Metropolitan contends
that because Neary testified on behalf of Metropolitan on two
occasions, he therefore "had interaction with the Company's legal
department." (Pl. 56(a)(2) Statement ¶ 53.)

Neary had the authority to write checks to claimants and

6

body shops for, at one point in the period of April 2004 to January 2006, up to $20,000. (Pl. 56(a)(2) Statement ¶ 50.) He testified that he had authority to write checks up to that amount without obtaining permission and to appraise claims for up to $35,000 with recommendations which were almost always accepted. (Pl. Dep. at 96, 155.) A supervisor in the Rocky Hill office testified that "[Neary] has the ability to write whatever he wants, anything, and the only way it might be possibly be looked at is if someone did a reinspection on it, myself or someone else." (Scarpace Dep. at 190.)

Neary generally had the ability to schedule his day and make his own appointments, though he denies that he worked "independently" or with "minimal supervision." (Pl. 56(a)(2) Statement ¶ 15, 26-27.) Neary testified that his paperwork was "inspected as it came in," and that he was accompanied by a supervisor on a "ride-along" day every "couple of months." (Pl. Dep. at 107.) As evidence of close supervision, Neary offers his evaluations and disciplinary records, including a disciplinary letter stating why he was placed on probation and instructing him to adhere to the attached list of "Adjuster's Responsibilities." (Pl. Mem. in Opp., Exs. K-L.) Yet, Neary was not specifically aware of any manual to which he referred to on a regular basis regarding the scope of his supervision. (Pl. Dep at 284-87.)

Metropolitan contends that Neary worked alone on the basis

7

of his testimony describing how many claims he inspected and completed (Pl. Dep. at 103-05), in contrast to Neary's position that he collaborated on claims with others (id. at 83-84), but this disagreement appears merely semantic. Metropolitan defines "alone" as physically alone during the day, while Neary characterizes "alone" as not consulting or discussing the claim with anyone else. The plaintiff does not argue that he was regularly accompanied by anyone in completing his daily duties, and Metropolitan does not contend that Neary was the only Metropolitan employee to handle an insured's claim.

The parties further contest whether Neary negotiated and settled claims. (Pl. 56(a)(2) Statement ¶ 50.) Metropolitan asserts that this was one of his "primary duties." (Def. 56 (a)(1) Statement ¶ 50.) But, according to Neary, that an inside claims adjuster actually determined whether to pay a claim establishes the fact that he did not settle claims. (See Scarpace Dep. 82-86.) Neary also references the fact that he did not provide any customer service regarding "coverages," "deductibles," or "fault" as confirming his role to merely appraise the value of the damage once the claim had been settled by the inside adjuster. (Pl. Dep. at 83-84.) Although the evidence shows that Neary provided customer service to claimants, Neary denies Metropolitan's contention that he represented the company "in all of its dealings with customers." (Pl. 56(a)(2)

Statement ¶ 14.)

Following his termination for crashing a company car and not following proper reporting procedures (Pl. Dep. at 135-36), Neary brought this action pursuant to the FLSA challenging Metropolitan's classification of his position as exempt from overtime compensation.

## II.  Discussion

### A.    Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-1061 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the

party opposing the motion." Id. (citations omitted). "If reasonable minds could differ as to the import of the evidence . . . and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain [] summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations, alterations and quotations omitted).

**B.    The FLSA framework**

The FLSA generally requires employers to pay their non-exempt employees overtime compensation for any hours worked in excess of forty per week. 29 U.S.C. §§ 207(a). But the Act specifically exempts from this requirement "any employee employed in a bona fide . . . administrative . . . capacity." § 213(a)(1). The regulations promulgated pursuant to the FLSA define this "administrative exemption" as encompassing any employee paid a salary of "not less than $455 per week," "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(1)-(3).

With the minimum salary provision not in dispute (see Pl.

56(a)(2) Statement ¶¶ 12-13), the issue is whether Neary's position with Metropolitan satisfied these "directly related" and "discretion and independent judgment" elements, thereby falling within the administrative exemption to the FLSA's overtime requirements.

### C.    Elements of the administrative exemption

#### 1.    "Directly related"

The Department of Labor regulations offer further guidance on this element:

> To meet this ["directly related"] requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a).  Section 541.201(b) enumerates several examples of such work, including "work in functional areas such as tax," "auditing," "insurance," "purchasing," and "research."

Most cases that have dealt with the issue have held that insurance adjusters satisfy the "directly related" test.[1]  See, e.g., In re Farmers Ins. Exchange, 481 F.3d 1119, 1132 (9th Cir. 2007); Robinson-Smith v. Gov't Employees Ins. Co., 323 F. Supp. 2d 12, 23 (D.D.C. 2004); Jastremski v. Safeco Insurance Cos., 243 F. Supp. 2d 743, 752-55 (N.D. Ohio 2003); Palacio v. Progressive

---

[1] The Department of Labor regulations were revised in 2004, but were not intended to cause a substantive change in the law nor affect the cases decided under the pre-2004 regulations.  See 29 C.F.R. pt. 541 (2004).

11

Ins. Co., 244 F. Supp. 2d 1040, 1046-47 (C.D. Cal. 2002).  In

Palacio, in light of the findings that an insurance claims agent

"assessed liability, weighed evidence, determined credibility,

reviewed insurance policies, negotiated with attorneys and

claimants, and made recommendations to management based on

skills, knowledge, and training," and that servicing the business

generally includes "advising the management, planning,

negotiating, and representing the company," the plaintiff

satisfied the "directly related" test.  244 F. Supp. 2d at

1045-47 (quotation marks omitted).  Similarly, the court in

Robinson-Smith found that an adjuster who inspected damaged

vehicles, entered a description of the damage into a computer,

offered payment in the amount generated by the computer, filled

out appraisal forms, and photographed damage satisfied the

"directly related" test because such adjusters were "engaged in

servicing the insurance policies of [the] customers and in

carrying out the policies formulated by [the employer]."  323 F.

Supp. 2d at 14, 23.

 Not all courts have agreed that claims appraisers satisfy

this requirement.  For example, in Reich v. American

International Adjustment Co., the auto appraisers at issue were

responsible for receiving case assignments, making appointments

to travel to a vehicle's location, inspecting the vehicle,

determining which parts were to be replaced or repaired,

estimating the cost of repair with the assistance of company manuals, and negotiating such cost with a body shop. 902 F. Supp. 321, 322 (D. Conn. 1994). In finding that these employees did not satisfy the second prong of the test, Judge Covello reasoned that the "[a]ppraisers gather facts and determine the cost of repair to damaged automobiles," but "[r]ather than administratively running the business, they carry out the daily affairs of AIAC." Id. at 325.

Courts have also considered the "administrative/production" dichotomy described in 29 C.F.R. § 541.201(a) setting exempt administrative employees apart from non-exempt production workers. Robinson-Smith, 323 F. Supp. 2d at 23; Palacio, 244 F. Supp. 2d at 1047; AIAC, 902 F. Supp. at 325. But while this distinction is relevant, it is not dispositive: the Department of Labor stated that "the dichotomy has [n]ever been [n]or should be a dispositive test for exemption." 69 Fed. Reg. 22,122, 22,141 (April 23, 2004) (codified at 29 C.F.R. pt. 541); see also AIAC, 902 F. Supp. at 325.

Here, Metropolitan claims that the undisputed facts lead to the conclusion that Neary's duties satisfied the "directly related" test. (Def. Mem. in Supp. at 11.) However, only certain aspects of Neary's job duties are undisputed: inspecting damaged automobiles visually, writing estimates, and reaching agreements with auto body shops regarding repair costs. The

13

parties disagree whether Neary determined when vehicles were a total loss, whether he negotiated with anyone other than body shops, and whether he actually settled claims. The undisputed duties in this case more closely mirror the duties which failed to meet the "directly related" test in AIAC rather than Robinson-Smith and Palacio, as Metropolitan has not shown that the plaintiff settled claims, negotiated with anyone other than auto body shops, or set reserves.

Turning to the examples of employees meeting the "directly related" test provided in 29 C.F.R. § 541.201(b), these are all duties clearly related to servicing the business itself: it could not function properly without employees to maintain it; a business must pay its taxes and keep up its insurance. Such are not activities that involve what the day-to-day business specifically sells or provides, rather these are tasks that every business must undertake in order to function.

Defendants contend that because the claims department at Metropolitan does not bring in any revenue and is "simply a cost of doing business," claims departments must be administrative in nature. (Def. Mem. in Supp. at 18.) This argument is based on the assumption that only revenue-making operations may be considered day-to-day operations, and is further flawed in the sense that settling claims efficiently — to which Neary's work at least contributed — does generate revenue by controlling the

losses anticipated by Metropolitan as a result of being in the insurance business.  But another problem with this inquiry is that whether an employee is to be exempt from the FLSA's overtime requirement is determined by the "type of work performed by the employee," not the business that the employer is in.  29 C.F.R. § 541.201(a).  Therefore, it would be of no consequence even if Neary did not produce revenue for Metropolitan.[2]

The Ninth Circuit reasoned in a case involving parole officers that the type of employees that the Department of Labor intended to exempt from overtime pay were employees engaged in the "running of the business itself or determining the overall course of its policies."  Bratt v. County of Los Angeles, 912 F.2d 1066, 1069 (9th Cir. 1990).  The court further explained that advising management is a crucially important part of an exempt worker's duties, such as making "policy determinations, i.e., how a business should be run or run more efficiently, not merely providing information in the course of the [employer's] daily business operation."  Id. at 1070.

It is clear that Neary had no role in advising management or effecting policies that would make the business run more efficiently.  With only the undisputed facts to consider, his job

---

[2] Additionally, Metropolitan's contention that the claims department produced no revenue and was just a "cost of doing business" seems at odds with its argument elsewhere that Neary was an administrative employee engaged in advising the management and servicing the business itself in a meaningful way.

duties included visually inspecting damaged automobiles, writing estimates, and reaching agreements with auto body shops regarding repair costs. Standing alone, this does not constitute servicing the business in the manner intended by the regulations. Thus, Metropolitan has not met its burden of showing that Neary was engaged in activities "directly related to the management or general business operations" of Metropolitan.

### 2.   "Discretion and independent judgment"

This third element of the administrative exemption is also supplemented by additional explanation in the regulations. Several provisions are relevant to the classification of Neary's position.  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  This language

> must be applied in the light of all the facts involved
> in the particular employment situation [including]
> whether the employee has authority to commit the
> employer in matters that have significant financial
> impact; whether the employee has authority to waive or
> deviate from established policies and procedures
> without prior approval; whether the employee has
> authority to negotiate and bind the company on
> significant matters; whether the employee provides
> consultation or expert advice to management; . . .
> whether the employee investigates and resolves matters
> of significance on behalf of management; and whether
> the employee represents the company in handling
> complaints, arbitrating disputes or resolving
> grievances.

§ 541.202(b).  Such an employee must have the "authority to make

an independent choice, free from immediate direction or

supervision . . . even if their decisions or recommendations are

reviewed at a higher level," and "must be more than the use of

skill in applying well-established techniques, procedures or

specific standards described in manuals or other sources," but

"does not include . . . recording or tabulating data, or

performing other mechanical, repetitive, recurrent or routine

work." § 541.202(c), (e).  Finally, an employee does not meet

this requirement

> merely because the employer will experience financial
> losses if the employee fails to perform the job
> properly [e.g.,] a messenger who is entrusted with
> carrying large sums of money [or] an employee who
> operates very expensive equipment . . . .

§ 541.202(f).

In Robinson-Smith, the court held that the decision-making

process used to determine whether a part was to be repaired or

replaced and negotiating the cost of repairs with body shops did

not constitute "discretion and independent judgment" but rather

was an example of using skill in applying established techniques.

323 F. Supp. 2d at 24-25.  In AIAC, distinguishing between

appraisers and adjusters, the district court concluded,

> the appraisers' duties involve fact finding to
> determine the cost of repair.  They are guided in those
> duties by skill and experience and by manuals which
> provide established labor and material costs.  While
> the adjusters negotiate and settle claims with the
> insured and deal with issues of coverage or liability,

17

the appraisers are the fact finders.
902 F. Supp. at 324.  The Ninth Circuit held in <u>In re Farmers</u>
that the duties of an "adjuster" and an "appraiser" were distinct
with regard to this requirement, concluding that the plaintiffs
were not appraisers but adjusters who "investigate[d] the
validity and the extent of liability of a claim and negotiate[d]
settlement," thereby exercising the discretion contemplated by
the FLSA regulations.  481 F.3d at 1129 (quotation marks
omitted); <u>cf.</u> 29 C.F.R. § 541.203(a) (noting that "[i]nsurance
claims adjusters generally meet the duties requirements for the
administrative exemption . . . if their duties include activities
such as interviewing insureds; witnesses and physicians;
inspecting property damage; reviewing factual information to
prepare damage estimates; evaluating and making recommendations
regarding coverage of claims; determining liability and total
value of a claim; negotiating settlements; and making
recommendations regarding litigation").

In this case, the undisputed facts do not establish that no
reasonable fact-finder could disagree with Metropolitan that
Neary exercised discretion and independent judgment.  Negotiation
with auto body shops and estimation of the cost of repair are
simply not the kind of tasks that require the type of independent
judgment envisioned by the regulations.  Without more,
Metropolitan has not shown that Neary "evaluat[ed] possible

18

courses of conduct," 29 C.F.R. § 541.202(a), and then decided
what to do; instead, he used his knowledge and skill to make a
simple decision as to whether it would be cheaper to replace or
repair a part, for example.  The evidence does not show that
Neary was making "independent choice[s]" going beyond just
following procedures set out by Metropolitan: Neary testified
that he merely entered numbers into his laptop computer and the
software more or less did the work of valuing the claim and
deciding whether the claim was to be characterized as a total
loss.  See § 541.202(c), (e).  In addition, the list of
representative duties provided in the regulations go far beyond
what the evidence establishes that Neary did at Metropolitan.
See § 541.202(e).  Metropolitan has not shown that Plaintiff, for
example, had authority to negotiate and bind the company
financially to an extent beyond the bounds described in
§ 541.202(f).

Therefore, there is a genuine issue of material fact as to
this element, namely, whether Neary exercised the requisite
degree of "discretion and independent judgment" contemplated by
the FLSA regulations.  Consequently, Metropolitan has not met its
burden, and summary judgment is inappropriate.

### III. Motion to Proceed as a Collective Action

Neary seeks to certify a collective action pursuant to
29 U.S.C. § 216 consisting of "all current and former automobile

19

damage appraisers in Metropolitan's Claims Department at any time
after April 6, 2003, who worked at least one hour of overtime and
who were subject to Metropolitan's conduct of having designated
them as exempt from overtime and thereby denying them overtime
premiums for their overtime work." (Pl. Mem. [Doc. # 36] at 1.)
Plaintiff claims that this class would encompass individuals in
three different positions at Metropolitan, all who fill the role
of appraiser for damaged automobiles with respect to claims under
Metropolitan's insurance policies: Associate Appraiser—Auto,
Appraiser—Auto, and Senior Appraiser—Auto. (Id. at 2 (citing Ex.
A, Job Description of Auto Appraiser positions; Ex. B, Gallagher
Dep. at 36-37, 39).) Neary, citing defendant's written job
descriptions of the positions and excerpts from the Rule 30(b)(6)
deposition transcript of James Gallagher, contends that persons
in all three of these positions "perform essentially the same
primary duties," including "receiving claim assignments from
Dispatch Specialist;" "contacting customer; setting appointment
to inspect vehicle damage;" "writing cost estimate for repair of
damage; identifying total loss and coordinating claim handling
with Total Loss Specialist;" "documenting damages through
photographs;" "reviewing and applying coverages, deductibles and
exclusions;  "negotiating settlement; issuing payments to
claimants for repair;" "negotiating with body shops to reach
agreed repair costs;" and "providing supplementary estimates when

necessary."[3]    (Id. at 2.)   Plaintiff represents, citing Gallagher's testimony and a 2003 Metropolitan "FLSA Job Analysis" of the position of "Appraiser," that Metropolitan employs approximately 220-230 persons in these positions at any one time, that they work out of the "auto units" of Metropolitan's Field Claims Offices ("FCOs"), of which there are nine total, and that defendant has classified all of these individuals, at least within the temporal scope of the proposed collective action class, as exempt from the overtime requirements of the FLSA.

Defendant opposes plaintiff's motion, contending that his showing is insufficient to justify sending notice of an FLSA collective action, that the testimony of Metropolitan witnesses and individuals who are putative collective action members demonstrates that these individuals are not similarly situated, and that the highly individualized nature of the administrative exemption from the FLSA overtime requirements at issue precludes proceeding on a collective basis.   As will be explained infra, the Court finds that the defendant advocates far too high a burden to be imposed on plaintiff at this stage of the case.

---

[3] Neary notes that "[t]he Associate Appraiser's duties vary only in that they operate 'under the general direction of a Claim Supervisor or designee'" and "[t]he Senior Appraiser's duties vary only in that they 'may be assigned to lead special projects or initiatives [and] [m]ay be designated to supervise unit during supervisory absence."   (Id. at 2-3 (citing Gallagher Tr. at 92-93; Job Description at 5).)

### A.    Legal framework

The FLSA provides employees such as Neary with a right to sue on behalf of themselves as well as on behalf of "other employees similarly situated" for claimed violations of the FLSA; such a joint, or "collective," action requires potential plaintiffs to "opt in" to the suit in order to benefit from any judgment.  29 U.S.C. § 216(b).  It is also "well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA."  Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989)).

As both parties recognize, confronted with a purported collective action alleging an FLSA violation, "[c]ourts typically undertake a two-stage review in determining whether a suit may proceed as a collective action under the FLSA.  As a first step the court examines pleadings and affidavits, and if the court finds that proposed class members are similarly situated, the class is conditionally certified; potential class members are then notified and given an opportunity to opt-in to the action."  Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007); accord Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 264 (D. Conn. 2002).  "The second step of the certification analysis occurs upon completion of discovery.  A court, often prompted by

a motion for decertification by the defendant, will examine all evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated." Id. If it is determined that they are, the case will proceed to trial; if it is determined they are not, the class is decertified and only the individual claims of the purported class representative (here, Mr. Neary) would proceed. At the initial collective action assessment, before discovery is completed, a class representative has only a "minimal burden to show that he is similarly situated to the potential class," which requires "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." Cuzco, 477 F. Supp. 2d at 632-33; accord Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); Hoffman, 982 F. Supp. at 261; Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) ("The plaintiffs need not be identically situated to potential class members. Nevertheless, there must be a demonstrated similarity among the individual situations . . . some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged discrimination.") (internal quotation omitted).

Defendant here contends that, notwithstanding that this is

the initial collective action assessment and discovery has not yet concluded, because some discovery has taken place, the more stringent second tier standard is applicable.  The cases cited by defendant, however, are distinguishable because they concern circumstances where the action, including discovery progression, was decidedly further along than here, warranting application of the higher standard.[4]  Indeed, at least one recent case from the Southern District of New York has explicitly rejected the notion that just because discovery is underway a FLSA collective action plaintiff should be held to a higher standard.  See Cuzco, 477 F. Supp. 2d at 622 ("Plaintiff's motion here seeks only a first-step certification, and even though discovery is underway, it would be inappropriate to make more than the first-step certification decision.") (citing cases).

---

[4] See, e.g., Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (finding that "a more searching standard of review [wa]s appropriate" where plaintiffs "had time to conduct discovery and indeed [] filed supplemental evidence in support of their motion"); Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004) (applying higher standard where the court was "presented with fairly extensive evidence on the issue of whether putative class members are similarly situated"); Pfohl v. Farmers Ins. Group, No. cv03-3080 DT (RCX), 2004 WL 554834, at *2-3 (C.D. Cal. Mar. 1, 2004) (discovery had "been undertaken relating to the issues of certification of th[e] action as a collective action"); Moriksy v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000) (discovery completed "well before" the motion for certification was filed).  At least one case cited by defendant does not support its position because the court applied the conditional certification first-tier standard.  See Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 119 (D.D.C. 2004).

Metropolitan also contends that Neary has not met even the more minimal burden requiring reliance on pleadings and affidavits as Neary did not submit his own affidavit with his moving papers (though he did attach a personal affidavit to his reply memorandum). However, plaintiff did much more than rely on just the allegations in his pleadings and his own affidavit: he submitted Metropolitan's own documents and testimony concerning the similarly situated-ness of him to the other putative class members; the cases cited by defendant in support of its claim that plaintiff's showing here is per se insufficient are distinguishable or do not support its position as they do not require particular forms of evidence (e.g., affidavits) and/or the plaintiff in question submitted no affidavit or any other evidence.[5]  Accordingly, the Court will rely on the testimony,

---

[5] Prizmic v. Armour, Inc., No. 05cv2503 (DLI) (MDG), 2006 WL 1662614, at *2-3 (E.D.N.Y. June 12, 2006) (denying motion where plaintiff did not submit "any evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law") (emphasis in original); Morales v. Plantworks, Inc., No. 05cv2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (conclusory allegations in complaint insufficient); Dreyer v. Altchem Env. Servs., Inc., No. 06-2393 (RBK), 2006 WL 3676013, at *3 (D.N.J. Dec. 12, 2006) (denying motion where plaintiff attached no affidavits or any other evidence in support); Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003) (burden is not heavy and "may" be met by detailed allegations supported by affidavits"); Hall v. Burk, No. 01cv2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (noting "[u]nsupported assertions of widespread violations are not sufficient to meet [p]laintiff's burden" and denying plaintiff's motion where she did not submit affidavits or any other evidence); Thiebes v. Wal-Mart Stores, Inc., No. 98-802-KI, 1999 WL 1081357, at *3 (D.

affidavits, and documentary evidence submitted by both parties.
See Cuzco, 477 F. Supp. 2d at 632 n.3 ("Some courts rely
exclusively on pleadings and affidavits for this first-stage
analysis, because this review is often completed before the
beginning of discovery.  Since discovery is ongoing here and both
parties have submitted evidence gathered in discover in support
of their positions, this Court will consider the additional
information in making the first-step determination."); Holt v.
Rite Aid Corp., 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004)
(finding it "appropriate to examine all of the relevant
evidence," not "merely [] the evidence presented by the
[p]laintiffs," although emphasizing that "it [wa]s not weighing
evidence, or accepting the substance of the Declarations
submitted by the [d]efendant over the substance of any testimony
submitted by the [p]laintiffs").

Thus, the Court does not find plaintiff's evidentiary
showing per se insufficient, and it will apply the first tier

---

Or. Dec. 1, 1999) (affidavit and deposition testimony sufficient
to meet "lenient burden"); Hoffman v. Sbarro, Inc., 982 F. Supp.
249, 261-62 (S.D.N.Y. 1997) (affidavits submitted, but no
statement that they were necessary); D'Anna v. M/A-COM, Inc., 903
F. Supp. 889, 894 (D. Md. 1995) (ADEA case, follows FLSA
collective action provision) ("The plaintiff has not pointed to
any company plan or policy to target older employees for
termination. Plaintiff has done nothing more than identify eleven
individuals who are over forty years of age and who may have been
terminated during [supervisor's] tenure. The mere listing of
names, without more, is insufficient absent a factual showing
that the potential plaintiffs are 'similarly situated.'").

"modest factual showing" standard in deciding plaintiffs' Motion.

**B.    Discussion**

As detailed above, Neary has made at least a modest showing, citing documentary evidence and defendant's representative (Gallagher)'s own testimony, that he and the putative collective action members are similarly situated in that they all held the same or similar position and had the same or similar responsibilities and daily tasks.  Defendant's argument that in determining whether its claim of applicability of the administrative exemption is valid, individualized inquiry is necessary, does not preclude certification at this first stage. See, e.g., White v. MPW Industrial Servs., Inc., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) ("The notice stage of analysis is centered on whether the plaintiff has demonstrated, through allegations and factual support, that he and the putative class members were similarly situated — that is, victims of a common policy or plan of the defendant.  Defendants have the burden of proving any exemptions from the FLSA.  The Court believes that, at this stage, a defendant's assertion of the potential applicability of an exemption should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff. . . . Several courts have stated . . . that disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis.") (internal citations omitted); Austin v. CUNA

27

Mut. Ins. Soc., 232 F.R.D. 601, 606 (W.D. Wis. 2006) (rejecting
defendant's claim that the "fact-specific examinations of each
individual's employment" necessary to determine the claimed
applicability of the "white collar exemption" to FLSA precluded
collective action certification, finding that "defendant should
have reserved [its arguments] for a later stage in the
proceedings under the FLSA. . . . Defendant's arguments about the
predominance of individualized inquiries and the dissimilarities
between plaintiff and other employees are properly raised after
the parties have conducted discovery and can present a more
detailed factual record for the court to review."); Goldman v.
RadioShack Corp., 2003 WL 21250571, at *8 (E.D. Pa. 2003)
(granting conditional motion for certification finding the
required "lax showing of similarly situated" where the potential
members "were all subjected to the same employment contract with
RadioShack.  They were all required to work at least 54 hours per
week and all were denied overtime pay," rejecting defendant's
claim of potential differences in responsibilities and training,
explaining "we will not delve into a fact-specific 'similarly
situated' inquiry at this time. . . . [C]onditional certification
requires a lax showing of 'similarly situated.'  During this
first-tier inquiry, we ask only whether the plaintiff and the
proposed representative class members alleged suffered from the
same scheme.  A fact-specific inquiry is conducted only after

discovery and a formal motion to decertify the class is brought by the defendant").

Defendant cites, <u>inter alia</u>, <u>Mike v. Safeco Insurance Company of America</u>, 274 F. Supp. 2d 216, 220 (D. Conn. 2003), denying a motion to proceed as a collective action on finding that determination of whether the administrative exception applied to a plaintiff automobile insurance appraiser would be "extremely individual and fact-intensive" and thus the plaintiff had "not provided evidence of a common thread binding his proposed class of employees. Judge Squatrito found that the fact that the defendant had decided to re-classify all claims representatives, including all "Field Claims Representatives," of which Mike was one, as exempt did "not provide the necessary common thread" even though "Field Claims Representatives shared a common job description and were expected to perform the tasks enumerated in that specific job description." The representative plaintiff did not rely on the defendant's job description and had "expressly disavow[ed] this job description," claiming that "on a task-to-task, day-to-day, basis, he spent the balance of his time performing non-administrative functions despite the fact that his job description call[ed] for him to perform some administrative functions." <u>Id</u>. at 221. While Metropolitan cites to Neary's deposition testimony discussing the accuracy of Metropolitan's job descriptions, and claims that <u>Mike</u> is applicable, plaintiff's

testimony does not amount to the "disavowal" in <u>Mike</u>.  While
plaintiff explained the meaning of various terms and stated that
Metropolitan's job description was not "a 100 percent accurate
and complete description of the duties that [he] performed at
Metropolitan" (Pl. Dep. at 75-77, 287-88), he did not completely
disavow the description — his testimony was more to clarify the
tasks and responsibilities listed and the time he spent
performing each.  Moreover, there is no evidence that plaintiff's
clarifications do not similarly apply to the other proposed class
members.  <u>Cf</u>. <u>White</u>, 236 F.R.D. at 372 n.4 (distinguishing <u>Mike</u>
on the basis that in <u>Mike</u> "[t]he court refused to certify the
class . . . because the plaintiff did not challenge a company-
wide policy, but instead asserted that his employer treated him
in a certain way").  Here, notwithstanding his testimony, Neary
claims that he and all putative class members were injured by the
same Metropolitan policy — designation as exempt from the FLSA of
automobile appraisers — which is sufficient to meet the lenient
first-tier collective action standard.[6]  To hold to the contrary

---

[6] Other cases cited by defendant do not counsel otherwise
and/or are distinguishable.  <u>See</u> <u>King v. West Corp.</u>, 2006 WL
118577, at *13 (D. Neb. 2006) (parties had agreed to send initial
notice, discovery was nearing completion, and court therefore
conducted second-tier similarly situated analysis); <u>Freeman v.
Wal-mart Stores, Inc.</u>, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)
(denying motion for conditional certification finding plaintiff
had not "propose[d] a class that [wa]s sufficiently defined and
manageable" where the proposed class "include[d] more than 7,000
current and former employees and [] there [we]re material
differences in the duties and responsibilities of those

would preclude certification of a collective action in any FLSA case where the defendant was asserting an administrative exemption defense.

Further, defendant's insistence on the need for an "indisputably homogenous group" imposes too high a standard on plaintiff at this stage, where he need only make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law" — i.e., a "factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (citation omitted). The evidence submitted by plaintiff constitutes a preliminary showing

employees" and where plaintiff's view appeared to be "that all salaried Wal-Mart employees below officer level [were] similarly situated no matter what the nature of their duties"); Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Or. 2002) (class members "held different job titles, enjoyed different payment structures (piece-rate, hourly, and salaried), and worked at nine different job sites" and "much of the [alleged] unlawful conduct was committed by small, individual companies who were later acquired by defendant" such that "plaintiffs who worked for these separate entities [were] not related as victims of a uniform, national policy"); Dean v. Priceline.com, Inc., 2001 WL 35961086, at *2 (D. Conn. 2001) (denying motion for conditional certification, finding "[t]he proposed class consists of a group of individuals with different jobs and different job responsibilities"); Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498-99 (D.N.J. 2000) (plaintiffs referenced only "an extremely broad 'general connection' all plaintiffs have to the production of electricity" and defendant submitted evidence that the plaintiffs held "a wide variety of positions and perform[ed] a wide variety of job duties").

that all putative class members held the same or similar
positions, had the same or similar duties, and were all
designated, as a class, as exempt from the overtime provisions of
the FLSA.  The nature and scope of the differences listed by
defendant with respect to the tasks and responsibilities of the
proposed class members (see Def. Opp. at 24-26), are as yet
unknown, and these types of differences may or may not make any
difference with respect to the ultimate determination of whether
the administrative exemption is applicable to these individuals.
Courts are not to evaluate the merits of potential plaintiffs'
claims when determining whether a putative class meets the
similarly situated standard.  See, Gjurovich, 282 F. Supp. 2d at
105 ("Whether the positions the Plaintiff held were exempt is not
an issue when deciding whether to authorize notice in an FLSA
action. . . . The Court need not evaluate the merits of a
plaintiff's claims in order to determine that a definable group
of similarly situated plaintiffs exist."); Hoffman, 982 F. Supp.
at 262 ("[T]he Court need not evaluate the merits of plaintiffs'
claims in order to determine that a definable group of 'similarly
situated' plaintiffs can exist here. . . . Nor must this Court
wait for defendant to complete its discovery before authorizing
class notice.  To the contrary, courts have endorsed the sending
of notice early in the proceeding, as a means of facilitating the
FLSA's broad remedial purpose and promoting efficient case

32

management."). Moreover, if defendant is able to demonstrate, after conclusion of discovery on a motion for decertification, that meaningful differences preclude a finding of similarly situated, the Court can decertify the class at that stage.

As to defendant's claim that plaintiff has not identified other potential class members who would want to participate in this action, such identification, at this preliminary stage, is not required in the Second Circuit.[7]  Indeed, identification of potential class members is part of the purpose of authorizing and notice.

Additionally, the prejudice to Metropolitan claimed —

_____

[7]  The only case from within the Second Circuit identified by the parties' research to mention identities of other potential plaintiffs states that "[p]laintiff is not required to indicate specifically how many potential opt-in plaintiffs may join the suit, nor must an FLSA plaintiff join with other potential plaintiffs at the time a suit is filed in order for a representative action to be pre-certified." Cuzco, 477 F. Supp. 2d at 634.  As plaintiff observes, all of the cases cited by defendant are from outside this Circuit, not all impose such a requirement, and those that do rely on Dybach v. State of Florida Department of Corrections, 942 F.2d 1562 (11th Cir. 1991), which decision never discussed the issue but remanded to the district court with instructions to consider whether there were other similarly situated plaintiffs who sought to opt-in.  See Reab v. Elec. Arts, Inc., 214 F.R.D. 623, 629 (D. Colo. 2002) ("The cited language in Dybach is dicta.  Research fails to reveal any court that has applied this requirement.  Moreover, the instruction appears to conflict with United States Supreme Court's position that the Act should be liberally applied to the furthest reaches consistent with congressional direction.") (internal quotation omitted).
    Further, Neary has identified at least one individual who would opt-in to a certified collective action: Howard Temple, who the plaintiff has sought to join in this action.  (Mot. to Amend/Join [Doc. # 97/99].)

related to public relations, human resources, and financial injury — does not suffice to preclude certification at this stage; such preclusion would run contrary to the broad remedial purpose of the FLSA. See Hoffman, 982 F. Supp. at 262. Moreover, Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1002 (11th Cir. 1997), a Rule 23 case cited by defendant in support of its prejudice argument, concerned circumstances much more likely to cause substantial prejudice to the defendant: the plaintiffs were allowed to publish notice nationwide, engage in mass mailings, set up a toll-free telephone number, and were permitted to have ex parte communications with "any persons who may have knowledge of" the alleged discrimination, except for current defendant supervisory or managerial employees.

As to defendant's contentions regarding the proper geographic and temporal scope of any notice to be sent, Neary has agreed to confer with Metropolitan (and the Court, if consensus cannot be reached) on the form of the notice. In any event, however, the Court concludes that the geographic limits proposed by defendant (limited to individuals who worked in the same Rocky Hill Connecticut office as plaintiff) are not appropriate, as plaintiff's evidence of the similarly situated nature of the proposed class suggests that geography does not matter; the documentary evidence of the job duties and positions, and testimony offered, does not provide any basis on which to impose

34

geographic restrictions.[8]  Any categorical differences in job
positions/duties can be explored on discovery and provide a basis
for a de-certification or class limitation motion by defendant
after discovery has concluded.  As to the temporal limits
proposed by defendant on the basis of the applicable statute of
limitations, defendant's proposal does not take into account the
fact that the statute of limitations is extended from two years
to three in the event of a willful violation of the FLSA, see 29
U.S.C. § 255(a).  Plaintiff's allegations of willful violation
(3d Am. Compl. ¶ 16) are sufficient, at this preliminary notice
stage where merits are not considered, to support defining the
class on the basis of the three-year statute of limitations.
See, e.g., Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474,
484 (E.D. Cal. 2006) (finding "allegations of willful conduct in
the Complaint, combined with the declarations evidencing FLSA
violations" were sufficient "for the purpose of conditional
certification" to apply the three-year statute of limitations);
Patton v. Thomson Corp., 364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y.
2005) (finding allegation of willful violation justified notice

---

[8] The cases cited by defendant to the contrary are either
distinguishable or do not support defendant's position.  See
Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 660, 661
(E.D. Pa. 2001) (plaintiff sought certification for employees at
only one of defendant's business locations; Realite, 7 F. Supp.
2d at 305 (S.D.N.Y. 1998) (certification sought only for
defendant's New York City-area restaurants and court rejected
defendant's contention that the class should be limited to only
plaintiffs at the "same exact restaurant").

based on a three-year statute of limitations period).

## IV.  Conclusion

Accordingly, defendant's Motion for Summary Judgment [Doc. # 88] is DENIED.  Plaintiff's Motion to Proceed as a Collective Action Under the FLSA, to Compel Expedited Disclosure of the Names and Addresses of the Putative Class, and for Permission to Send a Notice and Consent Document to All Similarly Situated Individuals [Doc. # 33/35] is GRANTED.  As noted <u>supra</u>, the parties shall confer regarding the proper form of the notice to be sent, in light of this Court's Ruling, and shall submit to the Court their agreed-upon notice, or if no agreement, their respective proposed forms of notice.

IT IS SO ORDERED.

/s/ _____

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 27th day of September, 2007.**